638 So.2d 1320 (1994)
Terrilee BRENNAN
v.
James M. BRENNAN.
No. 92-CA-01077.
Supreme Court of Mississippi.
June 23, 1994.
*1321 Dempsey M. Levi, Levi & Denham, Ocean Springs, for appellant.
Herbert J. Stelly, Gulfport, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
Terrilee Brennan, hereinafter "Terri", appeals from a final judgment of divorce entered on September 30, 1992, by the Chancery Court of Harrison County awarding, pursuant to a consent agreement signed by both parties, a divorce absolute to Terri and her husband, James M. Brennan, hereinafter "James", on the ground of irreconcilable differences.
The chancellor awarded Terri continuing alimony in the amount of $500.00 per month and awarded, as lump sum alimony, the sum of $40,000.00, which represented her half share of the 401K Retirement Fund being generated by a deferred compensation plan with James' employer, the IBM Company. This sum was to be distributed when James reached a certain age and was not presently a sum of money payable to Terri without substantial discount.
On appeal Terri alleges the following as error committed by the lower court: (1) the amount of continuing or periodic alimony was inadequate; (2) the chancellor should have awarded, as lump sum alimony, a portion of husband's vested core retirement with IBM and 1/2 of a savings account identified as the Merrill Lynch CMA account; (3) the chancellor was manifestly wrong when he failed to require husband to pay medical and dental expenses and to provide medical and dental insurance coverage for her and the couples' three minor children and to also provide life insurance on himself and designate the children as sole beneficiaries; (4) the chancellor was manifestly wrong when he specified that *1322 the Templeton College Fund was to be used for the education of the three children and that upon exhaustion of those funds the children's college expenses were to be divided equally between the parties; and (5) the chancellor was manifestly wrong when he failed to order the partitioning of two (2) lots located in the State of Louisiana and owned jointly by the parties.
Finding that the lower court abused its judicial discretion in the award of alimony and child support, we reverse and remand.

STATEMENT OF THE FACTS
James and Terri were married on January 26, 1968; they separated on September 18, 1991. Throughout the marriage, James was employed by IBM corporation and Terri worked both inside and outside the home. Three (3) children were born of this marriage: twin daughters, Colleen Meredith Brennan and Stephanie Lee Brennan who were born on February 14, 1975, and a son, James Matthew Brennan, who was born on October 12, 1976. When this case was tried on July 29-30, 1992, the couple had been married twenty-four and one-half (24 1/2) years. At the time of the divorce on September 30, 1992, Colleen and Stephanie were seventeen (17) years of age and James was sixteen (16).
Prior to her marriage to James, Terri attended college for a year and a half where she studied liberal arts. After the marriage, Terri was primarily a homemaker and mother until she opened a needle art business in 1984. According to the testimony of James, the value of the business and its current inventory was $75,000.00. According to Terri, she had been offered "$6,000.00 lock stock and barrel." She appraised the business and its inventory at approximately $21,000.00.
During the couple's first year of marriage, James began working as a salesman for IBM Corporation. His income gradually increased over the years, and the Brennans enjoyed a healthy and prosperous lifestyle. James had a gross income of $75,700.00 in 1989, $102,000.00 in 1990, and $104,000.00 in 1991.
James earned his income by virtue of an arrangement whereby 65% of his income was derived from salary and 35% came from sales commissions. Effective March of 1992, the arrangement by which James received his compensation changed. Under the new arrangement, James received 90% by fixed salary and 10% via commissions. While James contends this effectively reduced his monthly income from $8,712.00 to $4,155.00, the proof suggests otherwise. James argued that his earning potential had been materially reduced; however, James had earned $57,000.00 as of July 15, 1992, a salary for one half the year.
James and Terri owned, as joint tenants, various stocks and bonds as well as a marital home in Gulfport worth over $200,000.00. They also owned two lots in the State of Louisiana, one of which was clouded and encumbered by a tax lien.
On September 24, 1991, James filed a complaint for divorce on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. Terri answered and counterclaimed for divorce on October 9, 1991.
On July 7, 1992, James and Terri signed and filed in the lower court a "Consent Agreement" whereby they mutually consented and agreed to (1) a divorce on the ground of irreconcilable differences; (2) sell the marital home, pay off the outstanding mortgage, reimburse Terri for the cost of any improvements, and divide the proceeds equally; (3) joint legal custody of the three (3) children with Terri to have paramount care, custody and control, and James to have reasonable visitation rights; and (4) the payment of child support with the amount to be determined by the court.
The parties submitted the following specific items to the chancellor for determination: the amount of child support; the division of real and personal property including stocks, bonds, savings, 401K deferred compensation, core retirement, IRA accounts, needle art shop, children's college fund and college education, automobiles, furniture and other household items; Ebel real estate; payment of outstanding liabilities; furnishings based upon a submitted list; private school for the *1323 children; spousal support in the form of continuing and lump sum alimony; and attorneys fees.
Following a trial on the disputed issues, the chancellor rendered a written opinion on August 7, 1992, ordering James to pay to Terri periodic alimony in the monthly amount of $500.00, child support in the monthly amount of $1,000.00, and attorneys fees in the amount of $1,000.00.
In addition, Terri was awarded, as lump sum alimony, $40,000.00, which represented her share of James' 401K retirement fund, a savings generated by deferred compensation of a portion of James' salary from IBM.
On August 17, 1992, Terri filed a "Motion To Amend" whereby she requested the lower court to either amend its findings or make additional findings with respect to, inter alia, the Merrill Lynch CMA savings account, James' future core retirement with IBM, and medical expenses/insurance. In addition, Terri sought clarification of the findings concerning the children's college education. Terri also claimed the amount of periodic alimony was grossly inadequate and sought modification from $500.00 a month to $2500.00 per month. An order overruling Terri's post-trial motion to amend was entered on September 15, 1992, when James and his lawyer announced ready to proceed in opposition while Terri and her attorney failed to appear. A six page "Final Judgment" was subsequently issued on September 30, 1992.

LAW
The five issues raised by Terri on appeal deal generally with (1) the inadequacy of periodic alimony; (2) the inadequacy of lump sum alimony; (3) the failure of the chancellor to require husband to provide medical, dental, and life insurance as a part and parcel of the care and maintenance of the minor children; (4) college expenses; and (5) the failure to order partitioning of certain real property located in the State of Louisiana.
While Terri claims the lower court was manifestly wrong in its decisions on some issues and erroneously failed to address other issues before the court, James claims the chancellor rendered a decision on all issues submitted to it by stipulation of the parties and that the lower court's judgment is not manifestly wrong.
We find only the issues regarding alimony and child support meriting discussion.

Standard of Review
Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule. Stevison v. Woods, 560 So.2d 176, 180 (Miss. 1990).
"This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss. 1990). See also Faries v. Faries, 607 So.2d 1204, 1208 (Miss. 1992).
In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." Newsom v. Newsom, 557 So.2d 511, 514 (Miss. 1990). See also Dillon v. Dillon, 498 So.2d 328, 329 (Miss. 1986). This is particularly true "in the areas of divorce and child support." Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989). The word "manifest", as defined in this context, means "unmistakable, clear, plain, or indisputable." Black's Law Dictionary 963 (6th ed. 1990).

ALIMONY

1. Periodic Alimony
The chancellor awarded to Terri periodic or continuing alimony in the amount of $500.00 per month which Terri claims on appeal is inadequate.
Terri does not contend she is now destitute or relegated to public assistance. However, Terri does assert that because she has no income from any other source, she has been compelled to go from a prosperous financial state to one of dependence upon the timely payment of alimony and child support by James. According to Terri, James is in a financial position which would support an increased award of alimony and such an increase would not be unduly burdensome or prevent him from leading a normal lifestyle.
*1324 The right to an award of periodic alimony flows from the duty of the husband to support his wife. Weiss v. Weiss, 579 So.2d 539 (Miss. 1991). The husband is required to support his wife in the manner to which she has become accustomed, to the extent of his ability to pay. Brendel v. Brendel, 566 So.2d 1269 (Miss. 1990). The value of the wife's assets and income should be determined in order to ascertain her needs to maintain her position in life to which she had become accustomed, and such value is considered by the trial court in assessing both alimony and support. Rudder v. Rudder, 467 So.2d 675 (Miss. 1985).
In other words, in determining the amount of alimony, if any, "[t]he chancellor should consider the reasonable needs of the wife and the husband's right to lead a normal life with a decent standard of living." McEachern v. McEachern, 605 So.2d 809, 813 (Miss. 1992).
We are mindful, however, that "[w]hether to award alimony, and the amount to be awarded, are largely within the discretion of the chancellor." Smith v. Smith, 614 So.2d 394, 397 (Miss. 1993), quoting Cherry v. Cherry, 593 So.2d 13, 19 (Miss. 1991); Gammage v. Gammage, 599 So.2d 569, 572 (Miss. 1992); Wood v. Wood, 495 So.2d 503, 504 (Miss. 1986). "In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion." McNally v. McNally, 516 So.2d 499, 501 (Miss. 1987). [emphasis supplied]
The record demonstrates that James Brennan earned a salary above the $100,000.00 mark in 1990 and 1991. Under a salary scheme whereby he earned 65% of his income as straight salary and 35% of it as commissions, James, for the last three years has earned approximately $8,000.00 per month. In July of 1992, he had at that point earned $57,000.00, a half-year's wages, which amounts to approximately $8,000.00 per month. While James asserts that due to a new salary scheme, his monthly income has been reduced from approximately $8,000.00 or so per month to roughly $4,000.00 per month, the numbers reflect that by mid-year in 1992, his overall earnings had not deviated from his earnings in 1990 and 1991.
Terri Brennan stated she earns $150.00 per month for teaching needlepoint classes and was not otherwise paid a salary for running the couple's business, "The Needlepoint Shop". The shop apparently never operated for a profit but served as a tax shelter and benefit for the couple. Further, the chancellor ordered the shop sold. It therefore follows that this business is not a source of recognizable income for Terri.
Because the chancellor appears to have utilized a figure reflective of only one month's income in calculating the award of alimony, we reverse and direct the chancellor to make specific findings as to James' income for 1992. As stated previously, the record reflects that as of July 1992, James continued to earn approximately the same salary as he did in 1990 and 1991, a salary whereby his overall adjusted gross income was in excess of $8,000.00 per month. Notwithstanding the adjustment in commission percentages, James may well continue to make a generous salary and he may continue to earn approximately $8,000.00 per month. If James continues in generating this amount of income, he should pay more than $500.00 a month in periodic alimony. Because the chancellor's award of $500.00 per month in periodic alimony appears on its face to be oppressive, unjust, and grossly inadequate, we reverse and order the chancellor to revisit this issue, in order to fully develop and consider James' income over time.

2. Lump Sum Alimony

Lump sum alimony "is a settlement between the husband and the wife as to the interest of the latter in his property, and as to the extent of the husband's duty to contribute to her maintenance and support." Retzer v. Retzer, 578 So.2d 580, 591 (Miss. 1990) quoting Miller v. Miller, 173 Miss. 44, 64, 159 So. 112, 119-20 (1935). See also Armstrong v. Armstrong, 618 So.2d 1278 (Miss. 1993).
A chancellor has the authority in a divorce proceeding to award lump sum alimony in conjunction with periodic alimony. Bush v. Bush, 451 So.2d 779 (Miss. 1984). *1325 Where a wife has contributed to the procurement of jointly accumulated property, the chancellor may effect an equitable division. Watts v. Watts, 466 So.2d 889, 891 (Miss. 1985). This division is based upon the economic, but not necessarily monetarily economic, contributions made by each party to the acquisition and maintenance of the property. Regan v. Regan, 507 So.2d 54, 56 (Miss. 1987). This Court in White v. White, 557 So.2d 480, 483 (Miss. 1989), listed several factors to be considered by the chancellor in determining whether or not to award lump sum alimony and the amount of the award. These factors include: whether the wife has made a substantial contribution to accumulation of total wealth of the payor either by wife's quitting a job to become a housewife, or by assisting in the spouse's business; the duration of the marriage (marriage lasted over twenty-four (24) years); and the disparity of the separate estates.
The post-divorce disparity of the separate estates demonstrates that the award was skewed slightly in favor of James. However, when the White factors are applied to the present case, it is apparent that the chancellor was mindful of each party's circumstances. We therefore affirm the chancellor's award of lump sum alimony.

CHILD SUPPORT

3. Medical, Dental & Life Insurance

While the record reflects that the chancellor considered the issues of health insurance part and parcel of the issue and amount of child support, the final judgment does not speak to these obligations. James claims these issues were never presented to the lower court and therefore are not properly part of this appeal. Terri, on the other hand, claims they were presented as a part and parcel of her request for child support, the specific amount to be determined by the lower court. Terri did testify that one of the things she was asking for in child support was health insurance for her and the three children. Terri contends the chancellor failed to consider the earning capacity and resources of both parents and the basic needs of the children when it did not provide for the medical and dental needs of the children.
The chancellor ultimately awarded $1,000.00 a month in child support. While James asserts that the award is in harmony with the child support award guidelines of 22% of adjusted gross income found in Miss. Code Ann. § 43-19-101 (Supp. 1993), it is questionable whether the chancellor utilized the correct numerical figures in calculating James' adjusted gross income for 1992. First, the record shows that the figure of $4,155.00 (James' salary for the month of February 1992) was used as the monthly figure. However, the record also shows that as of July, 1992, James had already earned approximately $57,000.00. Therefore, as of July, 1992, James continued to earn nearly $8,000.00 per month. The chancellor does not appear to use the overall salary earned that year. We therefore suggest that the chancellor make specific findings as to James' adjusted income for the year 1992 in calculating 22% for child support.
Terri also claims that the chancellor's failure to order James to procure life insurance and designate the children as beneficiaries deprived the children of financial security. When the parties by agreement submitted for the court's consideration the issue of "the payment of child support with the amount to be determined by the court", they submitted all economic issues pertaining to the subject of child support. Such issues include but are not necessarily limited to: insurance, both hospitalization and life insurance; college and the cost thereof; and any matter or fact that impacts on child support. Though the submission in the present case was not artful and may appear incomplete, the submission of "child support" to a chancellor includes all matters touching on that subject.
We are compelled to state that the lower court was correct in considering the insurance issues as part and parcel of any child support issue and that it was not required to be raised separate and apart from the issue of child support. Finally, if James' income is as it was in 1990, 1991 and the first half of 1992, the award of $1,000.00 per month in child support is well below the *1326 guidelines set forth in § 43-19-101 (Supp. 1993). Absent from the record of the case sub judice, is any type of evidence to overcome the presumption set forth in the guidelines. See McEachern v. McEachern, 605 So.2d 809, 813 (Miss. 1992); Thurman v. Thurman, 559 So.2d 1014, 1017 (Miss. 1990).
Because it appears that the chancellor erred in calculating the child support award without a finding that James' income has been in fact reduced, and because the chancellor may want to reconsider the question of insurance, the chancellor is directed to revisit the award of child support.

CONCLUSION
Because of the uncertainty in the calculations and resulting awards as to periodic alimony and child support, this case is reversed and remanded. Further, we instruct the chancellor in revisiting these issues to pay particular attention to James' income.
Finally, Terri's attorney should have more fully and precisely developed at trial the issues raised by this appeal. It is also unfortunate that her attorney after filing the Motion to Reconsider, failed to appear in court to argue the motion. Nonetheless, it is difficult for us to agree that alimony and child support benefits should be lost or reduced based on these actions. Alimony and child support must be based on the needs of the recipients and the income and earning ability of the payor.
REVERSED AND REMANDED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, BANKS, JAMES L. ROBERTS, JR., and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
McRAE, Justice, dissenting:
If the majority is remanding this case for reconsideration of the issues of child support and periodic alimony, the chancellor should be directed also to review the award of lump-sum alimony, taking into consideration the distribution of the couple's assets and liabilities as well. By affirming the award of lump-sum alimony, the majority further has merely rubber-stamped the chancellor's award of fifty percent of Mr. Brennan's 401-K deferred compensation plan to Mrs. Brennan. Accordingly, I respectfully dissent.
Lump-sum alimony is a fiction devised by courts to effect a division of property between the parties to a divorce where title is in the name of only one spouse. A chancellor may order a division of property or award lump-sum alimony to one party. He cannot do both.
This Court heretofore has held that one spouse has no inherent property right in the other's pension or retirement plan. Davis v. Davis, 626 So.2d 111 (Miss. 1993); Flowers v. Flowers, 624 So.2d 992 (Miss. 1993); Armstrong v. Armstrong, 618 So.2d 1278, 1282 (Miss. 1993); Southern v. Glenn, 568 So.2d 281 (Miss. 1990). However, assuming arguendo that a pension plan is subject to division, one must consider such distribution of property or lump-sum alimony in light of any award of periodic alimony. That is, the divorcing parties' total financial picture  their assets and liabilities  must be taken into consideration when determining both lump-sum and periodic alimony. If one spouse is awarded an interest in the other's pension plan as part of a lump-sum distribution, the ability of that spouse to pay periodic alimony must be premised upon the fact that he will receive income from only a proportionate share of that plan, and not upon the misnomer that the "whole" asset will continue to generate the income upon which the ability to pay alimony is based. Surely we would not divide a rental property between the parties as lump-sum alimony and expect the income upon which an award of periodic alimony was based to be predicated upon the paying spouse's receipt of the total rental revenues from that property. When any revenue-producing asset is divided between the parties, common sense and fairness dictate that an award of periodic alimony should be based on post-division dollars and cents.
Retirement plans should be considered either as income or as property. In the past, we have made the preferable finding that a pension plan is part of the stream of income a chancellor may consider when determining alimony and child support. Brown v. Brown, *1327 574 So.2d 688, 691 (Miss. 1990). See also Powers v. Powers, 465 So.2d 1036 (Miss. 1985) (under Mississippi marital property law, military pension divisible as part of alimony award). Mr. Brennan's 401-K plan with IBM is a deferred compensation plan. Thus, once he is eligible to make withdrawals from the plan, those funds should be considered part of his stream of income for purposes of modifying the award of periodic alimony. Similarly, were Mr. Brennan already retired and receiving distributions from his pension plan, those monies would be part of his stream of income, analogous to a salary or the interest, dividends or other revenues from any other income-producing asset. However, as the majority opinion is written, Mr. Brennan retains only a fifty percent interest in his pension plan. To use the value of the entire plan to serve as the basis for the periodic alimony he must pay essentially allows Mrs. Brennan to "double-dip." See Brown, 574 So.2d at 691. Therefore, once an asset has been deemed "property" for purposes of division or distribution, it should not also be classified as "income" for the determination of periodic alimony.
For purposes of periodic alimony, the majority cites Rudder v. Rudder, 467 So.2d 675 (Miss. 1985), and notes that "the value of the wife's assets and income should be determined in order to ascertain her needs." It appears that Mrs. Brennan's "need" for periodic alimony, as well as the majority's finding that the amount awarded to her is inadequate in light of her former husband's earnings, is based on pre-divorce and pre-property distribution dollars. That is, her needs apparently are based on her assets or income prior to receiving fifty percent of the "marital assets." Likewise, Mr. Brennan's ability to pay periodic alimony is based on his income prior to the divestment of assets. Moreover, Mr. Brennan's pre-divorce salary upon which the award appears to be based do not take into consideration those pre-tax dollars he annually contributed to his deferred compensation plan. The resultant inequities vividly illustrate the need to award any periodic alimony in light of the parties' real income and asset position after any division of assets or award of lump-sum alimony has been made.
The chancellor awarded Mrs. Brennan the windfall sum of $40,000.00 from the deferred compensation plan, apparently fifty percent of its current value.[1] In Davis, as well as in Flowers v. Flowers, 624 So.2d 992 (Miss. 1993), we expressly acknowledged that Mississippi is not a community property state and thus one spouse did not have a vested right to an equal share in the other's military pension plan. Davis, 626 So.2d at 113; Flowers, 624 So.2d at 995. Before the ink has dried on those cases, and without overruling them, the majority apparently sings a different song. Because this is a corporate deferred compensation plan, it should not be treated differently. Furthermore, if the chancellor is to be directed to reconsider the issues of child support and periodic alimony, he should be instructed to do so in light of the award of lump-sump alimony, as well as of the parties' total assets and liabilities. Accordingly, I dissent.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] To his credit, the chancellor specified that Mrs. Brennan was liable for taxes on her share of the plan as well as for the early withdrawal penalty should she choose to withdraw her share prior to the time Mr. Brennan reached the age of fifty nine and a half. See Draper v. Draper, 627 So.2d 302, 307 (Miss. 1993) (McRae, J., dissenting).