# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-01300-SCT

*DARYL JACKSON*

*v.*

*KATHY JACKSON*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/16/95 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID M. SESSUMS |
| ATTORNEY FOR APPELLEE: | WILLIAM M. BOST, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 2/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

Daryl Jackson appeals from a final decree of divorce entered on November 17, 1995, by the Chancery Court of Warren County awarding a divorce absolute to Kathy Jackson, on the grounds of uncondoned adultery.

Chancellor Vicki R. Barnes awarded Kathy permanent custody of the parties' minor children: Andrea, born March 28, 1979, and Tanya, born February 22, 1982. Daryl was ordered to pay $485 per month child support and $600 per month as periodic alimony. Also, Daryl was given various personal items. The chancellor found the only substantial asset of the parties was Daryl's civil service and army reserve retirement accounts. Because these accounts were earned during the parties' marriage, the chancellor awarded Kathy one-half of Daryl's retirement benefits. Further, Daryl was ordered to pay $3,000 of over $4,000 of attorney fees for Kathy's representation.

On appeal Daryl alleges the following as error committed by the lower court:

**I. WHETHER THE LOWER COURT ERRED IN SETTING THE AMOUNT OF CHILD SUPPORT PAYABLE BY DARYL JACKSON?**

**II. WHETHER THE LOWER COURT ERRED IN SETTING THE AMOUNT OF PERIODIC ALIMONY PAYABLE BY DARYL JACKSON?**

**III. WHETHER THE LOWER COURT ERRED IN SETTING THE COMBINED AMOUNT OF CHILD SUPPORT AND ALIMONY PAYABLE BY DARYL JACKSON?**

**IV. WHETHER THE LOWER COURT ERRED IN AWARDING ONE-HALF OF DARYL'S RETIREMENT BENEFITS, CIVIL SERVICE BENEFITS, AND ARMY RESERVE BENEFITS TO KATHY JACKSON?**

**V. WHETHER THE LOWER COURT ERRED IN AWARDING KATHY JACKSON ATTORNEY FEES OR, ALTERNATIVELY, THAT THE AMOUNT OF ATTORNEY FEES DARYL JACKSON WAS ORDERED TO PAY WAS EXCESSIVE IN LIGHT OF MR. JACKSON'S INCOME AND EXPENSES, HIS LACK OF ASSETS AND THE COURT'S AWARD OF CHILD SUPPORT AND ALIMONY AND RETIREMENT BENEFITS TO KATHY JACKSON?**

**VI. WHETHER THE LOWER COURT ERRED IN ITS AWARD OF PERSONAL PROPERTY TO KATHY JACKSON?**

## STATEMENT OF THE FACTS

Daryl and Kathy Jackson were married on August 30, 1975. Kathy Jackson did not complete high school. The parties had two children during their marriage, Andrea, born March 28, 1979, and Tanya, born February 23, 1982. Daryl was employed at the time of the hearing and throughout most of the parties' marriage by the Corps of Engineers, as well by the Army Reserve. Kathy had worked at the Corps of Engineers for the first fourteen (14) years of the marriage and subsequently held a series of jobs. Two days before the hearing, Kathy's legal secretarial position was terminated. Kathy was represented at the hearing by her former employer, William M. Bost, Jr. Kathy remained unemployed at the time of the divorce hearing.

During most of their marriage, the parties lived in a home on Maple Circle in Vicksburg. Later in January 1990, the Jackson family moved into a more expensive home on Hickory Street. At the time of the hearing, the parties had virtually zero equity in the new home. Testimony at the hearing revealed Daryl had been alcohol and substance dependent for a length of time, but was able to put those troubles behind him. However, just over a year later, the parties began having marital troubles because of a "power struggle" between Daryl and Kathy. Their problems grew and later led to this divorce.

On October 19, 1995, a divorce hearing was held in the Warren County Chancery Court before Chancellor Vicki R. Barnes. Kathy Jackson testified to marital problems and lack of communication between the parties before their separation. Kathy recalled that Daryl had taken a sapphire bracelet from her jewelry box and speculated he later gave it to a female co-worker. Kathy later observed the

bracelet on the arm of Daryl's co-worker. Kathy stated Daryl had confessed to having an affair with the same co-worker. Kathy testified when she left her job at the Corps of Engineers, she withdrew her retirement account of approximately $13,000 and subsequently used the money to pay family expenses. Kathy stated it was necessary to use her retirement account to pay these debts because Daryl was buying large amounts of cocaine and alcohol, and family debts were accumulating. Kathy stated she does not have a high school education and has only worked as a secretary. Kathy stated she had searched for a new job but remained unemployed. Kathy testified the family had moved into a new house in January 1990, on which they only paid $1,000 down. Because of closing costs and realtor fees, Kathy stated she did not believe equity existed in the home. Kathy stated she would like to receive possession of the house, personal goods, children's custody and one-half of Daryl's retirement benefits. Kathy stated she was unable to pay for her legal representation in the divorce proceeding, because even if she worked full-time, her household would still run a deficit each month. Kathy stated during the times she had been unemployed during their marriage, she had been a good wife and mother, by caring for the children and her husband.

The parties' oldest daughter, Andrea, testified that since her parents' separation, she had been forced to cut back in school activities, including cheerleading, because of the lack of money. Andrea stated she had gone to see her father one week before the hearing, at Tim Buehler's house. Andrea testified her father had been living at Buehler's home since her parents' separation. Andrea stated she believed Sheila Ivers, the co-worker of Daryl, was living or spending a great deal of time with her father. Andrea stated she had looked under the bathroom sink and found feminine hygiene products. Although Buehler had two little girls, Andrea believed the girls did not use the feminine products.

Daryl Jackson testified he had been living with his friend, Tim Buehler, since the parties' separation in June 1995. Daryl denied that Sheila Ivers lived at the Buehler home. However, Daryl admitted he had committed adultery with Sheila. Daryl admitted having been in Sheila's company often; however, Daryl stated he knows many people and is seen with many people, but he had only committed adultery with Sheila. Daryl admitted he does "outside" work on weekends and estimated he had made $2,000 for the year by working on the side. Daryl stated his outside work consists of painting, hanging sheetrock and carpentry. Daryl stated his retirement account in the civil service system to be $26,000. Daryl stated he would like to receive some personal property in the house: breakfast table, a T.V., freezer, his mother's sewing machine, woodwork which Daryl had made by hand, bread machine, his mother's recliner, pictures, shoe shine kits, sports equipment and tools. Daryl testified his gross annual salary is $44,500. Although Daryl was still staying with Buehler, Daryl stated that this was temporary and that he would soon be moving out. Daryl stated he had looked for an apartment to rent and estimated the cost to be $500 per month based upon various rent prices he had seen.

Kathy Jackson was called as a rebuttal witness. She testified that she wanted to keep the freezer but that Daryl could have the bread machine, T.V., his woodwork, breakfast table, recliner and other personal items.

On November 3, 1995, the chancellor entered the court's findings. Based upon Daryl's admission, the court found that Daryl had committed adultery before the dissolution of the parties' marriage. The court awarded Kathy a divorce upon the grounds of adultery. The chancellor found Kathy to be a fit mother and awarded custody to her. Daryl was ordered to continue medical insurance coverage on

his two daughters and to pay one-half of all medical expenses not covered by insurance. Daryl was awarded the breakfast table and chairs, a T.V., personal pictures, tools, shoe shining kits, sporting equipment, his mother's sewing machine, chair and recliner. The remainder of personal property was awarded to Kathy, although she did not object to Daryl receiving the bread machine and his personal woodwork objects. The chancellor found the only marital assets to have substantial value or equities to be Daryl's retirement accounts. The chancellor applied the marital asset division factors as set out in *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). However, the chancellor did not distribute the property in this analysis, instead several pages later the property is awarded without explanation as to the division. The chancellor found that both parties had worked during their marriage and spent time on family duties, however, Daryl left the marital domicile and caused the dissolution of the marriage with his adultery. The chancellor found that Kathy had spent the proceeds of her retirement account on family needs. The house has little equity and has sentimental value to Kathy and the daughters. The chancellor found there to be no property of significant value to be used to reduce or eliminate periodic payments. Kathy was unemployed and listed expenses totaling slightly more than $2,200 per month, and those expenses appeared reasonable. Daryl's monthly adjusted income totaled $2,420 per month. The chancellor found the list of estimated expenses provided by Daryl to be reasonable except $500 for rent. Because Daryl was living with Buehler, the chancellor did not allow any estimate for rent expense to Daryl, for this reason the disallowance of rent expense reduced Daryl's estimated expenses to $1,131 per month. Applying the statutory guidelines for child support, for two (2) dependent children, 20 percent of Daryl's adjusted monthly income per month ($2,420) totaled $484. The chancellor ordered Daryl to pay $485 per month for child support.

To determine the amount of alimony payable by Daryl, the Chancellor applied the factors outlined in *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993). Chancellor Barnes found periodic alimony should be awarded based upon Kathy's lack of education and her inability to meet the financial needs of her family. The chancellor found that Daryl is obligated to maintain the family in the same or similar circumstances as those before the divorce. Daryl was ordered to pay $600 per month in periodic alimony. Further, the chancellor found that Kathy was without funds to pay her attorney fees and expressly found the legal fees to be reasonable. Daryl's army reserve and civil service retirement accounts were ordered to be divided evenly because they were accumulated during the parties' marriage. Daryl was ordered to pay $3,000 of Kathy's legal fees which totaled over $4,000. On November 17, 1995, the final decree of divorce was entered.

## DISCUSSION OF THE ISSUES

The scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard. *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1994); *McEwen v. McEwen*, 631 So. 2d 821, 823 (Miss. 1994).

### I. WHETHER THE LOWER COURT ERRED IN SETTING THE AMOUNT OF CHILD SUPPORT PAYABLE BY DARYL JACKSON?

According to Miss. Code Ann. § 43-19-101 (1) the percentage of adjusted gross income that should be awarded for support of two children due support is 20 percent. Applying the 20% guideline to Daryl's monthly adjusted income equals $484 per month. Daryl does not offer any support for his

argument, nor does he contend the chancellor's finding of his monthly adjusted income of $2,420 to be erroneous. Therefore, the chancellor correctly set the amount of child support payable at $485.

## II. WHETHER THE LOWER COURT ERRED IN SETTING THE AMOUNT OF PERIODIC ALIMONY PAYABLE BY DARYL JACKSON?

## III. WHETHER THE LOWER COURT ERRED IN SETTING THE COMBINED AMOUNT OF CHILD SUPPORT AND ALIMONY PAYABLE BY DARYL JACKSON?

In determining the amount of alimony, if any, "[t]he chancellor should consider the reasonable needs of the wife and the husband's right to lead a normal life with a decent standard of living." ***Brennan v. Brennan***, 638 So. 2d 1320, 1324 (Miss. 1994); ***McEachern v. McEachern***, 605 So. 2d 809, 813 (Miss. 1992). We are mindful, however, that "[w]hether to award alimony, and the amount to be awarded, are largely within the discretion of the chancellor." ***Smith v. Smith***, 614 So. 2d 394, 397 (Miss. 1993), quoting ***Cherry v. Cherry***, 593 So. 2d 13, 19 (Miss. 1991); ***Gammage v. Gammage***, 599 So. 2d 569, 572 (Miss. 1992); ***Wood v. Wood***, 495 So .2d 503, 504 (Miss. 1986).

Daryl testified he was looking for an apartment to rent for himself. He further stated he had been living rent free with Buehler since June, but his residency there was temporary. The chancellor ordered Daryl to pay $600 alimony and $485 child support per month, and the chancellor deemed Daryl's estimate of monthly expenses, totaling $1,131, reasonable but made no allowance for rent expense. Subtracting the alimony, child support award and deemed reasonable expenses from Daryl's adjusted monthly income of $2,420 leaves only $200 per month. This is the amount the chancellor believed sufficient for Daryl to pay rent each month.

$2,420 Monthly adjusted income

( 485) Child support

( 600) Alimony

(1,131)Reasonable expenses

$200 Amount available before rent expense

Daryl testified he had read the newspaper and made several telephone calls to find an apartment. Based upon his search, he estimated an apartment to cost $500 per month, although some were less expensive and some more expensive. No other testimony was offered on the costs of apartment rental. Although the chancellor's discretion may determine $500 is not reasonable for apartment rental, a $200 allowance does not suffice for apartment rental anywhere in Mississippi without government subsidy.

Daryl's testimony revealed he did other work away from his full-time job for extra money. However, Daryl did not testify this work was constant or he desired to continue working on the side. Further, the chancellor's findings does not reflect the court relied upon Daryl's outside work in making its findings.

A review of the record shows the chancellor miscalculated the amount of periodic alimony payable by Daryl Jackson each month. The chancellor did not consider Daryl's rent expense and therefore erroneously determined Daryl's income after expenses available for alimony. The issue of alimony is reversed and remanded for the chancellor to revisit and consider Daryl's rent expense and any and all other expenses and properly determine the amount of periodic alimony.

### IV. WHETHER THE LOWER COURT ERRED IN AWARDING ONE-HALF OF DARYL'S RETIREMENT BENEFITS, CIVIL SERVICE BENEFITS, AND ARMY RESERVE BENEFITS TO KATHY JACKSON?

Daryl contends the chancellor was manifestly wrong in awarding to Kathy a one-half interest in his retirement plan with the Army Reserve and Civil Service Plan. However, these assets accumulated during the marriage and are, for the purposes of divorce, marital property "subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1994); *Hemsley v. Hemsley*, 639 So. 2d 909, 914-915 (Miss. 1994). Despite Daryl's assertions, under *Johnson* and *Hemsley* these assets are marital property properly subject to equitable distribution. Kathy worked during most of the parties' marriage, and when not working she stayed home and cared for the children and family. Daryl contends Kathy had her own retirement account and she wasted the money. However, testimony revealed Kathy's retirement account was spent on family needs and debts. Thus Daryl's allegation is without merit.

### V. WHETHER THE LOWER COURT ERRED IN AWARDING KATHY JACKSON ATTORNEY FEES OR, ALTERNATIVELY, THAT THE AMOUNT OF ATTORNEY FEES DARYL JACKSON WAS ORDERED TO PAY WAS EXCESSIVE IN LIGHT OF MR. JACKSON'S INCOME AND EXPENSES, HIS LACK OF ASSETS AND THE COURT'S AWARD OF CHILD SUPPORT AND ALIMONY AND RETIREMENT BENEFITS TO KATHY JACKSON?

An award of attorney fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards. *Adams v. Adams*, 591 So .2d 431, 435 (Miss. 1991) (*citing Cheatham v. Cheatham*, 537 So. 2d 435, 440 (Miss. 1988)). *See also Armstrong v. Armstrong*, 618 So. 2d 1278, 1282 (Miss. 1993). Attorney fees are not generally awarded unless the party requesting such fees have established the inability to pay. *Dunn v. Dunn*, 609 So. 2d 1277, 1287 (Miss. 1992); *Jones v. Starr*, 586 So. 2d 788, 792 (Miss. 1991). The chancellor's discretion is limited in making an award of attorney fees. *Smith v. Smith*, 545 So. 2d 725, 729 (Miss. 1989). "The fee should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary." *Dunn*, 609 So. 2d at 1286. When considering an award of attorney fees,

> a sum sufficient to secure a competent attorney is the criterion by which we are directed. The fee depends on ... relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

***Smith***, 545 So. 2d at 729 (*quoting **McKee v. McKee***, 418 So. 2d 764, 767 (Miss. 1982)).

It was well established that Kathy was unable to pay her attorney fees. At the date of the hearing she was unemployed and even if she had worked full-time, she would still be without sufficient income to meet the monetary needs of herself and her daughters. The chancellor specifically found the amount of her attorney fees reasonable.

Sufficient evidence was presented to show Kathy was without funds to pay her attorney. Therefore, the award of legal fees was proper and did not constitute manifest error.

### VI. WHETHER THE LOWER COURT ERRED IN ITS AWARD OF PERSONAL PROPERTY TO KATHY JACKSON?

Daryl contends the lower court committed manifest error by awarding personal property to Kathy, although Kathy testified she did not object to Daryl receiving items which he specifically asked for. Daryl asked for: bread machine, a T.V., his personal woodwork, his mother's sewing machine and recliner, one of the table and chair sets, shoe shining kits, tools, sports equipment, personal pictures and a freezer. Kathy stated she did not object to Daryl receiving these items, except the freezer. The chancellor awarded the freezer to Kathy, as well as the bread machine and Daryl's personal woodwork. Although the chancellor discussed the ***Ferguson*** factors, she did not distribute the personal property in this discussion. Several pages after discussing the ***Ferguson*** factors the chancellor awarded the personal property without explanation for the award.

The chancellor was manifestly wrong in awarding the bread machine and Daryl's personally made woodwork to Kathy. This issue is reversed and remanded and the chancellor is instructed to award these items to Daryl.

### CONCLUSION

Daryl Jackson alleged the amount of child support and alimony set by the chancery court is manifestly wrong. However, the chancellor followed the statutory guidelines in setting the amount of child support. On the other hand, the chancellor was manifestly wrong in not considering a rent expense for Daryl Jackson, when setting periodic alimony.

The chancellor correctly distributed the retirement accounts, earned during the marriage, as marital property. The chancellor found Kathy Jackson was unable to pay her legal fees and, acting within the chancellor's discretion, ordered Daryl Jackson to pay approximately 75 percent of Kathy's legal fees. Because this appeal was not frivolous nor wasteful, the open motion for assessment of legal fees is overruled. Finally, the chancellor was manifestly wrong in awarding certain items of personal property without explanation to Kathy Jackson, after Kathy had testified she had no objection to Daryl having these items.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR.**