KING, P. J., for the Court.
¶ 1. This matter is before this Court on a third appeal arising from the divorce of James Brennan (Brennan) and Terrilee Brennan Ebel (Ebel). Following the second remand by the supreme court, the Harrison County Chancery Court commenced a four day trial in July of 1999, and entered judgment on November 16, 1999. A hearing on post trial motions was held in January of 2000. The contentious nature of this matter is such that post trial motions delayed the notice of appeal for over two and a half years. On August 26, 2002, Brennan gave notice of appeal. He asserts the following issues which we quote verbatim:
1. The November 15, 1999 opinion of the Court should be vacated because a reasonable person, knowing all the circumstances, would harbor doubts about the Chancellor’s impartiality.
2. The November 15, 1999 opinion of the Court should be vacated because Mrs. Ebel sponsored a falsified Court document bearing a forged signature of a Louisiana Probate Judge containing information about her assets, which the Chancellor had before him in issuing the November 15,1999 Order.
3. The trial Court erred in refusing to modify or eliminate periodic alimony in view of the changed circumstances of the parties.
4. The trial Court erred in denying credit paid directly to the child in support for the minor child Meredith Brennan.
5. The trial Court did not have subject matter jurisdiction to reconsider the $40,000.00 lump sum alimony award previously made to Ms. Ebel as her portion of Mr. Brennan’s 401(k) plan.
6.If Mr. Brennan is in error with regard to his assertion of no jurisdiction in the trial Court to reconsider the lump sum alimony/QDRO division, then, in the alternative the trial Court erred by giving Mrs. (Brennan) Ebel an interest in contributions made by Mr. Brennan after the divorce or in any appreciation of the funds.
Finding no error, we affirm.
STATEMENT OF THE CASE
¶ 2. Brennan and Ebel were married in January of 1968. Three children were born to the marriage: Meredith and Stephanie, twin girls, born on February 14, 1975, and a son, Matthew, born on October 12, 1976. Brennan and Ebel were divorced upon grounds of irreconcilable differences in 1992, but were unable to agree upon a division of property. Following a trial upon that issue, the chancery court entered an order on September 30, 1992, dividing the marital estate. Chancellor Jason H. Floyd, who conducted the first trial, is now retired. Ebel appealed, and the supreme court issued its first opinion on June 23, 1994. Brennan v. Brennan, 638 So.2d 1320 (Miss.1994). That opinion affirmed the award of lump sum alimony, but reversed and remanded on the issues of alimony and child support. Id. at 1325-26. However, Brennan also contests the issue of lump sum alimony in this present appeal, contending that the award of lump sum alimony was $40,000, while the chancery court found that the initial judgment of September 30, 1992, which was affirmed on the issue of lump sum alimony, provided that the award was for a percentage of just less than 50% of the value of Brennan’s 401(k) plan.
*1061 ¶ 3. Following the supreme court’s June 23, 1994 remand, the parties conducted further discovery, and presented additional evidence to the chancery court. On August 31, 1995, the chancery court entered its second order, which increased the alimony to $750 per month, the child support to $1,260 per month, and eliminated the sharing of college expenses. In an unpublished opinion, the supreme court again reversed and remanded. Brennan v. Brennan, 96-CA-923-SCT (Miss. Aug. 24, 1998). The supreme court’s second decision held that the chancery court erred in basing its award of periodic alimony and child support solely on the facts adduced at the first trial, rather than considering the means and needs of the parties which had been the subject of the parties’ subsequent discovery. The supreme court affirmed deletion of the requirement that Ebel share in the cost of the children’s college educations because that expense was considered in calculating Brennan’s child support obligation. Additionally, the supreme court held that the retroactive award of periodic alimony and child support was within the discretion of the chancery court, but noted that consideration should be given to whether Brennan was entitled to credit for any support, which he provided directly to Meredith after she came to live in his household.
¶ 4. After the supreme court’s 1998 remand, Chancellor Tom Teel replaced Chancellor Jason H. Floyd, Jr. Following additional discovery and a new trial, on November 16, 1999, the chancery court issued its judgement. That judgment provided: (1) that no modification of alimony was warranted, (2) that no recalculation of child support was warranted, (3) that the initial divorce decree had awarded Ebel a percentage of Brennan’s 401(k) plan, and (4) that the supreme court had affirmed the award of the percentage of Brennan’s 401(k) plan to Ebel.
¶ 5. Both parties filed post trial motions. Ebel filed a motion to reconsider, asserting, inter alia, that $750 per month in periodic alimony was insufficient. Brennan filed a motion to reconsider, asserting (1) that the chancery court had erred both in its finding as to the financial abilities of the parties, (2) that because he had made contributions into the 401(k) plan for four years following the divorce and initial property division, the chancellor erred in subjecting the entire 401K to division, and (3) that Ebel had committed fraud on the court by filing an altered Louisiana probate document that misrepresented her ownership in real estate property. Brennan next filed a motion to vacate the judgment, recuse Chancellor Tom Teel and appoint an out of district chancellor. Chancellor Tom Teel subsequently resigned, and Chancellor Carter Bise entered a second order denying the motions to reconsider.
DISCUSSION
1. VACATION OF JUDGMENT FOR PARTIALITY OF CHANCELLOR
¶ 6. Brennan suggests that there existed reasons to doubt the impartiality of Chancellor Teel, and therefore he should have recused himself from hearing this case. The record is clear that Brennan knew prior to trial of the circumstances which he now suggests carried the potential for partiality by Chancellor Tom Teel. Brennan states that his attorneys, Chester and Gail Nicholson, had represented an individual in a civil action against Chancellor Tom Teel’s brother, Wes Teel. Also, the individual filed a bar complaint against Wes Teel which resulted in a public reprimand. Brennan suggests that these circumstances would cause a reasonable person to harbor doubts as to the impartiality of Chancellor Tom Teel.
*1062 ¶ 7. Brennan’s post trial motion for recu-sal was based upon Chancellor Teel’s decision, some sixteen months after the judgment issued in this case, to reassign from his docket all cases involving the Nicholson firm. Subsequent to the November 16, 1999 judgment, a newspaper article was published concerning the matter involving Wes Teel, and his public reprimand. Following the publication of the newspaper article, Chancellor Teel concluded it appropriate to recuse from his docket cases in which the Nicholsons appeared.
¶ 8. Post trial motions for recusal are viewed with disfavor. “It would allow defense counsel to purposely ‘sandbag’ the trial judge into error if he received an adverse verdict.” Ryals v. Pigott, 580 So.2d 1140, 1175 (Miss.1990). While such motions are viewed with a critical eye, they are resolved on an ad hoc basis, and may be found meritorious if there is some reasonable excuse for the failure to recognize and raise the issue of partiality. Id. In this case, there is none. The matters, which Brennan now questions, were known prior to trial. Indeed, Brennan testified that the issue of potential partiality by Chancellor Tom Teel was discussed with his counsel, who informed him that Chancellor Teel could render an impartial verdict.
¶ 9. There is nothing in the record to support a finding of partiality. The evidence on every issue was controverted. The trial lasted four days and approximately 100 exhibits were entered into evidence. This issue is without merit.
2. VACATION OF JUDGMENT FOR FALSIFIED LOUISIANA PROBATE DOCUMENT
¶ 10. Brennan’s motion to vacate the judgment is a Mississippi Rules of Civil Procedure Rule 60(b)(1) and (3) motion seeking relief from a judgment. Such a motion should be filed within six months after entry of the judgement. Brennan’s motion was not filed within that six month period, and was therefore not timely. The standard of review for a Mississippi Rules of Civil Procedure 60 motion to grant relief from a judgment is abuse of discretion. Telephone Man, Inc. v. Hinds County, 791 So.2d 208(¶ 9) (Miss.2001).
¶ 11. Ebel conceded that she altered a document detailing a trust set up by her late father covering the assets of Ebel Real Estate. That trust gave her mother a life interest in the trust income, and the corpus to Ebel and her brothers. The document retained all relevant information containing the terms and beneficiaries of the trust, while deleting a listing of the properties held in the trust.
¶ 12. Pursuant to Rule 60 of the Mississippi Rules of Civil Procedure, a motion should be granted where a deceit has occurred that has prevented an aggrieved party from correctly ascertaining the true merits of his claim, or the position of his adversary. Id. However, the corollary to this principle is that motions, pursuant to Rule 60 of the Mississippi Rules of Civil Procedure, may not disturb the principle that a judgment is final, and a party is not relieved from his own failure to investigate a claim. A party “must make some showing that he was justified in failing to avoid mistake or inadvertence.” Moore v. Jacobs, 752 So.2d 1013(¶ 6) (Miss.1999) (citing Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984)).
¶ 13. While the document was redacted, there is insufficient evidence of deceit. Indeed, it must be noted that, prior to trial, counsel for Ebel, submitted to counsel for Brennan an executed authorization to obtain all of her financial records, conditioned upon his execution of a like document. Brennan declined to do so. Brennan had the opportunity to obtain a true *1063 copy of the document in question. He could have obtained it as a document in the public domain, or he could have obtained it by the execution of mutual authorizations for release of financial information. Accordingly, there is no showing that the chancery court abused its discretion in denying the motion. This assignment of error is without merit.
3. REFUSAL TO ELIMINATE OR MODIFY PERIODIC ALIMONY
¶ 14. “The court’s standard of review in domestic relations matters is limited. We will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Traxler v. Traxler, 730 So.2d 1098 (¶ 13) (Miss.1998). See also Wesson v. Wesson, 818 So.2d 1272(¶5) (Miss.Ct.App.2002). The chancery court viewed the evidence, and determined alimony, pursuant to the Armstrong factors. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 15. Brennan contended that his decline in income was a material change in circumstances, which justified the elimination or modification of periodic alimony. After the second appeal of this case, the supreme court, on August 24, 1998, remanded this case to the chancery court, with instructions to consider facts accruing after the initial trial, and to consider the sufficiency of, and the ability to pay, alimony from 1992 through the time of the parties’ latest litigation in 1999.
¶ 16. The chancery court found that when the $750 per month amount was initially set, Brennan had an annual income of approximately $73,720. His income exceeded $100,000 in 1996, but had fallen to $36,972 at the time of the last hearing. The chancery court noted that the alimony had not been increased even in years when Brennan’s income rose above $100,000. The chancery court also found that Ebel’s income, including alimony, had been in flux. It declined in 1994 and 1995, peaked with a high of $25,862 in 1996, and thereafter declined to a low of $16,968 at the time of trial. While Ebel’s income fluctuated, the chancery court found that her needs remained largely unchanged from 1993 to 1998. The chancery court concluded that while it could be said that alimony should have decreased in recent years, it could also be said that alimony should have increased during 1993 and 1994.
¶ 17. “A chancellor’s decisions concerning the distribution of marital assets and alimony will not be disturbed unless shown to be manifestly wrong, clearly erroneous or based on an incorrect legal standard.” Gable v. Gable, 846 So.2d 296 (¶ 16) (Miss.Ct.App.2003). The record reflects that the chancery court viewed the evidence in this case under the correct legal standards of Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), and still found Ebel in need of assistance. Given the evidence in the record, this Court cannot say that the chancellor abused his discretion or was manifestly wrong. This issue is without merit.
4. CREDIT FOR BRENNAN’S SUPPORT OF MEREDITH
¶ 18. The supreme court’s second remand in this case mandated that the chancery court determine whether Brennan should have received credit for payments made directly to and for Meredith. In March of 1996, after the supreme court mandate but before the chancery court issued any order on the matter, the parties agreed to terminate support for Meredith and Stephanie as they had reached age twenty-one, and modified support for Matthew, who was attending college out of state, to $875. The exact date of Meredith’s emancipation was subject to dispute, *1064 as she left college in 1995, and obtained full time employment, and then returned to college in 1996, after the parties agreed child support for her should be terminated.
¶ 19. The chancery court found that both parents had attempted to support the children and made sacrifices on their behalf. He noted the significant sums which each party had in some way contributed to the support of the children. The court therefore determined that it would not allow credit to Brennan for support paid directly to Meredith, and that equity dictated that the parties were better left in the same positions that existed when they entered the chancery court for the third time.
¶20. The award of credit to a custodial parent ordered to pay child support to the non-custodial parent is premised upon the equitable principal of preventing “unjust enrichment.” Alexander v. Alexander, 494 So.2d 365, 368 (Miss.1986). The chancellor applied the correct legal principle to the facts of this case. The evidence is sufficient to support the chancellor’s finding that the amount each parent had already paid for the support and education of the minor children had already worked equity. We find no merit in this issue.
5. WHETHER THE DIVISION OF THE 401(K) PLAN WAS A LUMP SUM DIVISION
¶ 21. The initial divorce decree awarded Terri lump sum alimony of $40,000 from Brennan’s 401 (k) fund. The supreme court affirmed that award of lump sum alimony, stating that it “represented her share of James’ 401K retirement fund.” Brennan v. Brennan, 638 So.2d 1320, 1323 (Miss.1994). The supreme court’s 1994 decision was a final judgment on the matter, which was not subject to further litigation in the chancery court.
6. WHETHER THE CHANCERY COURT ERRED IN GIVING EBEL AN IN CONTRIBUTIONS TO THE 401 (K) MADE AFTER THE DIVORCE
¶ 22. It was not disputed that Brennan contributed to the 401 (k) plan for approximately four years after the divorce. The November 16, 1999 judgment found that at the time the $40,000 was initially awarded, the 401(k) had a value of $82,610. The chancery court set the percentage of the plan’s total value that Ebel was entitled to at 40,000/82,610. Upon post trial motions, the chancery court amended that finding. “The parties are directed to redraft the QDRO to reflect that her share should be segregated as of the date of July 1992, and that she is entitled only to passive accretion to her share from that date forward.” Thus, any error that may have arisen in giving Ebel a share in contributions made after divorce was cured, and there is no merit to this assignment of error.
¶ 23. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.