527 So.2d 90 (1988)
Jesse Boyce HOLLEMAN
v.
Elizabeth Carey Sullivan HOLLEMAN.
No. 57506.
Supreme Court of Mississippi.
May 18, 1988.
*91 Joseph R. Meadows, Gulfport, for appellant.
Frank D. Montague, Jr., Gray, Montague & Pittman, Hattiesburg, for appellee.
En Banc.
ZUCCARO, Justice, for the Court.
This is an appeal from a judgment of the Chancery Court of Harrison County dated September 13, 1985 granting a divorce to the appellee from the appellant and making provisions for child custody and support, alimony, health care and an equitable division of property. From said judgment, Jesse Boyce Holleman appeals, alleging six (6) assignments of error.

FACTS
On November 1, 1970, appellant and appellee were married and from said marriage one child, Elizabeth Ruth Holleman was born on April 9, 1973. The parties continued to live together as husband and wife until March 21, 1984, at which time they were separated.
May 18, 1984, Mrs. Holleman filed her complaint for divorce alleging as grounds habitual cruel and inhuman treatment. After a lengthy trial, the lower court granted a divorce to Mrs. Holleman on the grounds of habitual cruel and inhuman treatment. No appeal is made on the granting of the divorce. In its judgment rendered on September 13, 1985, the lower court made provision for the custody and support of Elizabeth Ruth Holleman, alimony and health care for appellee, an equitable division of the marital property as well as attorney's fees for Mrs. Holleman. On appeal the appellant challenges six (6) provisions of the lower court's judgment which we examine here.

I. DID THE LOWER COURT ERR IN RULING THAT APPELLANT'S OBLIGATION TO PROVIDE APPELLEE ALL NECESSARY DENTAL EXPENSES AND BACK TREATMENT FOR THE YEARS 1985, 1986, AND 1987, AND APPELLANT'S OBLIGATION TO PAY APPELLEE PERIODIC ALIMONY WOULD CONSTITUTE AN OBLIGATION OF APPELLANT'S ESTATE?
Paragraph 10 of the Judgment provides:

*92 Defendant shall pay unto Plaintiff the sum of $2,500.00 per month by way of `periodic alimony' for a period of ten (10) years and shall be responsible for all necessary dental expenses and back treatment which Plaintiff may incur during the years 1985, 1986 and 1987.
In paragraph 19, the lower court again dealt with the duration of certain payments, including alimony, by specifically providing:
... the obligations of child support, hospital, dental and optical care, back treatment, life insurance, alimony, debt indemnity, housing provision, maintenance and repair imposed upon Defendant by this Judgment shall constitute obligations of his Estate in the event of his demise or disability. ... (emphasis added)
The lower court in effect, made the payment of $2,500 per month periodic alimony a debt of Mr. Holleman's estate in the event he should die.
It is well settled in this State that periodic or permanent alimony terminates upon the death of a husband or upon the remarriage of the wife. East v. East, 493 So.2d 927, 931 (Miss. 1986). It would be said now, on the death of either party or remarriage of the party receiving alimony. On the other hand, lump sum alimony becomes vested in the party to whom it is awarded, and it does not terminate upon remarriage or death. It may be paid in installments. In East, supra, this Court stated that it is "doubtful" if any court has the power to make periodic alimony continue beyond the death of the husband. East at 931.
In the present case, both parties recognize the $2,500 per month payments as being periodic alimony and appellee argues that periodic alimony should be treated in a similar manner as lump sum alimony so that it would become a vested interest and debt of the husband's estate. The present law in this State does not allow this to occur. East at 931. The lower court erred when it made the payment of periodic alimony a debt of Mr. Holleman's estate at his death. Also it is noted that there was a ten (10) year limitation on the "periodic alimony". A fixed and certain sum of money which is due and payable over a definite period of time is clearly alimony in gross, or lump sum alimony, Wray v. Wray, 394 So.2d 1341, 1345 (Miss. 1981), and not periodic alimony. Mrs. Holleman failed to cross-appeal on this point and we do not have the issue before us. Accordingly, we hold that the lower court erred when it made the payment of periodic alimony a debt of Mr. Holleman's estate at his death should it occur within the "ten year" period and the judgment is reversed and rendered as to this point.

II. DID THE LOWER COURT ERR IN PLACING A SPECIAL LIEN AGAINST APPELLANT'S HOMESTEAD TO SECURE PAYMENT OF ALL SUMS ORDERED UNDER THE JUDGMENT OF DIVORCE?
Paragraph 13 of the lower court's judgment provides that
A special lien is hereby placed against Defendant's homestead at # 5 Mockingbird Lane, Gulfport, First Judicial District, Harrison County, Mississippi to insure payment of all sums ordered to be paid by this Final Judgment... .
A plain reading of paragraph 13 shows that the chancellor intended to secure payment of the judgment by placing a lien on Mr. Holleman's homestead.
The record reveals that in her complaint for divorce, Mrs. Holleman failed to plead or ask for a lien to secure payment of the judgment. Further, there was no hearing on the matter until after the lower court had rendered its findings of fact and Mr. Holleman filed a motion to reconsider several of the court's findings, including the lien placed on his property. Mr. Holleman now argues that due to the fact that Mrs. Holleman's complaint did not specifically ask for a lien, he did not have adequate notice so as to prepare a proper defense to that point. Appellee admits that the lien was not plead, but argues that since alimony was specifically requested, and since she made a general prayer for any other *93 equitable relief, that the possibility of the imposition of a lien was adequately noticed.
Under the general prayer, any relief will be granted which the original bill justifies and which is established by the main facts of the case, so long as the relief granted "will not cause surprise or prejudice to the defendant." V.A. Griffith, Mississippi Chancery Practice § 186 (1950). Further, in regard to the imposition of a lien to secure payment of alimony, child support, etc., it has been stated that no such lien should be given or declared unless specifically asked for, so that the husband may have an opportunity to make a defense. J.W. Bunkley, Divorce and Separation in Mississippi § 6.09 (1957). While the lower court did have the power in its discretion to impose a lien upon Mr. Holleman's property to secure the award, Buckalew v. Stewart, 229 So.2d 559 (Miss. 1969), Mr. Holleman should have been provided notice that this might occur. The only consideration given to this matter occurred in a hearing conducted after trial on Mr. Holleman's motion to reconsider. We hold under these facts, Mr. Holleman was "surprised" by the imposition of a lien not specifically plead; further he had inadequate time and little opportunity to present a defense. This is especially so when it is considered that extensive pre-trial discovery was carried on. The lower court erred in impressing a lien against the homestead of the appellant and the lower court's judgment is reversed and rendered there as to.

III. DID THE LOWER COURT ERR IN RULING THAT APPELLANT HAD THE OPTION OF MAKING THE FORMER MARITAL HOME AVAILABLE TO APPELLEE FOR HER USE AND OCCUPANCY OR APPELLEE WOULD HAVE THE OPTION OF SELECTING ANOTHER REASONABLE HOME FOR HER USE AND OCCUPANCY AS LUMP SUM ALIMONY?
In the trial below, the chancellor made provision for living accommodations for Mrs. Holleman and her daughter by ordering in paragraph 14 of its judgment that:
14. Defendant shall have the option of making the former marital dwelling on Mockingbird Lane available to Plaintiff for her use and occupancy, or, in the alternative, if Defendant does not so furnish, Plaintiff shall have the option of selecting another reasonable location of her choice for her use and occupancy. Such dwelling shall be in the Gulfport, Bay St. Louis, Pass Christian area of the Mississippi Gulf Coast and shall be commensurate with the standard of living to which Plaintiff and Beth had become accustomed prior to the parties separation. Defendant shall provide major repairs and major maintenance of such dwelling as necessary. This dwelling shall be provided until such time as Plaintiff remarries, dies or otherwise becomes not entitled thereto under applicable law and further order of the Court, as lump sum alimony. (emphasis added)
The appellant argues that a dwelling in which to live and more specifically lump sum alimony were not asked for by Mrs. Holleman in her complaint and as such should not be granted because appellant was not apprised that such a matter would even be considered by the lower court. Better pleading practice would have been for Mrs. Holleman to have asked for permanent alimony as well as lump sum alimony but that point becomes moot when an examination of paragraph 14 makes it plain that, in spite of the fact that the lower court called the award in paragraph 14 "lump sum alimony", it was "periodic alimony". For instance, the last sentence provides "This dwelling shall be provided until such time as plaintiff `remarries,' `dies' or `otherwise' becomes not entitled thereto under applicable law and `further order of the court,' as lump sum alimony." (emphasis and quotation added) The lower court actually described periodic alimony and then erroneously called it "lump sum alimony". It was within the prayer for relief of permanent alimony and child support.
While the appellant did not assign as error the vague description of the house *94 and land which appellant should furnish to the appellee, we remand to the lower court for adjudication the question of shelter to be provided by appellant to appellee in the event that appellant shall not have chosen to furnish to the appellee the house on Mockingbird Lane which the parties occupied before their separation. Furthermore, the lower court should determine and define what is a "major" repair or "major" maintenance and what "another reasonable location" of her choice for use and occupancy mean.

IV. WAS THE AWARD OF $2,500 IN PERIODIC ALIMONY, MEDICAL TREATMENT AND HOUSING EXCESSIVE AND THEREFORE ERROR?
As previously seen, the lower court awarded Mrs. Holleman $2,500 per month for ten (10) years as periodic alimony. Mr. Holleman on appeal argues that the amount was excessive and, accordingly, the lower court was in error in making that award.
In the recent case of Tutor v. Tutor, 494 So.2d 362 (Miss. 1986), this Court set forth the elements to be considered by the chancellor in fixing alimony amounts. These elements are:
(1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the wife has free use of the home furnishings and automobile; and (9) such other facts and circumstances bearing on the subject that might be shown on the evidence.
Tutor at 364 citing Brabham v. Brabham, 226 Miss. 165, 176, 84 So.2d 147, 153 (1955). Further, in making the above determination, the amount of an alimony award is a matter to a great extent within the discretion of the chancery court because of its peculiar opportunity to sense the equities of the situation before it. Wood v. Wood, 495 So.2d 503 (Miss. 1986). In this regard, it must be noted that as of March 11, 1985, Mr. Holleman had a net worth of $530,455.45, and at the time of trial he had an outstanding tax liability of $95,764.18. Further, for four years preceding the divorce, Mr. Holleman's income averaged well in excess of $100,000 per year. Mr. Holleman's health is to some degree not good but this has not hindered him in actively carrying on a legal career and participating in community functions.
Mrs. Holleman has little if any net worth. Her income as a teacher at the time of trial was approximately $10,000 per year. Further, she has suffered from poor health, more specifically back problems requiring surgery, which have limited to some degree the subjects she can teach.
Under the above facts it is obvious that the chancellor did not commit manifest error in awarding Mrs. Holleman $2,500 per month in periodic alimony. The assignment of error is without merit.

V. DID THE LOWER COURT ERR IN RULING THAT APPELLANT FORTHWITH DELIVER TO APPELLEE A CLEAR TITLE TO THE AUTOMOBILE SHE WAS DRIVING?
Appellant argues that it was error for the lower court to order him to deliver clear title to a Lincoln automobile to Mrs. Holleman in which title was vested in Mr. Holleman. Appellant supports his argument with this Court's well established rule that a court is without authority to divest a spouse of title to his or her property. Wray v. Langston, 380 So.2d 1262 (Miss. 1980); Bridges v. Bridges, 330 So.2d 260 (Miss. 1976). The underlined portion of the stated rule is critical to the present case, in that the proof at trial indicated that the automobile in question was voluntarily given to Mrs. Holleman by her husband with the intent that such be a birthday gift, and as a consequence the automobile became her property. See Matter of Collier, 381 So.2d 1338 (Miss. 1980); Thomas v. *95 Eubanks, 358 So.2d 709 (Miss. 1978). If a gift, Mrs. Holleman was surely entitled to the unfettered ownership, possession and use of the automobile. Unfortunately, the lower court failed to make a factual determination as to whether or not the automobile was a gift. As this Court does not sit as a finder of fact, this issue is remanded for an appropriate determination.

VI. DID THE LOWER COURT ERR IN ITS AWARD OF ATTORNEY'S FEES TO APPELLEE, OR, IN THE ALTERNATIVE, THE ATTORNEY'S FEES AWARDED WERE EXCESSIVE?
In paragraph 18 of its judgment of divorce, the lower court ordered that Mr. Holleman pay the attorney's fees of Mrs. Holleman incurred in prosecuting her complaint by providing:
18. Defendant shall pay unto Plaintiff the sum of $18,675.00 by way of attorney's fees plus $1,078.01, representing expenses of her attorney. Additionally, Defendant shall pay all court costs in this case.
In its original findings of fact, following the divorce proceeding, the chancellor had provided for $15,000 in attorney's fees plus expenses in the amount of $919.96 and court costs. The figure provided for in the judgment exceeds that found in the fact findings due to Mr. Holleman's filing of a motion to reconsider, to which Mrs. Holleman had to defend, and as a result incurred the additional attorney's fees.
Mr. Holleman argues on appeal that the lower court erred in granting attorney's fees (or alternatively that such was excessive) due to the fact that there was insufficient proof during the trial or the motion hearing to substantiate the figure provided. In this regard, the record reflects as credible proof the following statement by appellee's counsel:
Since employment by Mrs. Holleman, I have expended in the investigation and preparation and trial of this case the following sums: Lodging, including meals away from Hattiesburg, $135.42. Travel expenses are $488.26, based on 35 cents per mile. Long distance expenses of $246.47. Copy of reproduction expense of $37.80. (sic) which disbursed liquidated items total $907.96. Allowing 12 hours for today's appearance, including travel time to and from Hattiesburg ... I will have expended 168.21 hours ...
As seen previously, the lower court determined that an award of $18,675 in attorney's fees plus $1,078 in expenses was reasonable. It is well settled that the question of determining attorney's fees in divorce cases is largely entrusted to the sound discretion of the chancellor. Devereaux v. Devereaux, 493 So.2d 1310 (Miss. 1986); Kergosien v. Kergosien, 471 So.2d 1206 (Miss. 1985). But, there is a limitation on the lower court's ability to award attorney's fees, in that such must be based upon a consideration of certain factors. In McKee v. McKee, 418 So.2d 764 (Miss. 1982), this Court stated that:
In determining an appropriate amount of attorney's fees, a sum sufficient to secure one competent attorney is the criterion by which we are directed. Rees v. Rees, 188 Miss. 256, 194 So. 750 (1940). The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case. (emphasis added)
McKee at 767.
Looking to the statement of appellee's counsel offered as proof of fees, it becomes readily apparent that the factors set out in the McKee case have not been remotely satisfied or supported with evidence. There was no explanation for the number of hours required, the usual charge in the community, or counsel's preclusion from other employment as a result of taking the present case. Under these facts, where *96 there was no substantiating evidence upon which to award attorney's fees, the chancellor abused his discretion in awarding such, and was in error. Id. This issue is remanded for an appropriate hearing in which the necessary evidence to award attorney's fees may be presented.

CONCLUSION
As set forth above, the decision of the Chancery Court of Harrison County is affirmed in part; reversed in part and remanded.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, and ANDERSON, JJ., concur.
SULLIVAN and GRIFFIN, JJ., not participating.
ROBERTSON, J., dissents with written opinion.
ROBERTSON, Justice, dissenting in part:
I have always been surprised how often labels lead lawyers astray. A dog does not become a cat because some judge (mistakenly) calls it a cat. Ten years of monthly alimony do not become periodic alimony because a court so mislabels it.
My specific concern is Section I of the majority opinion which appears on pages 91 and 92. Paragraph 10 of the divorce judgment directs that defendant pay as alimony $2,500.00 a month for ten years. Paragraph 19 then provides that alimony "shall constitute obligations of his estate in the event of his demise... ." I would interpret this language as written.
Nothing turns on whether the defendant's alimony obligation is (mis)labeled "periodic alimony" elsewhere. The label is irrelevant. The substantive provision of the judgment in Paragraph 10 is that "Defendant shall pay unto plaintiff the sum of $2500 per month ... for a period of ten years... ." By virtue of Paragraph 19, this obligation should constitute an obligation of his estate in the event of his death.
The majority's fallacy is that it allows the label to metamorphose the underlying reality. It allows the tail to wag the dog. All words are but imprecise labels. That they are labels and can be but imprecise suggests that, where possible, meaning should come from the phenomenon, not the descriptive.
I would affirm on this first question in this appeal; otherwise, I concur with the majority opinion.
SULLIVAN and GRIFFIN, JJ., not participating.