COLEMAN, J., for the Court:
¶ 1. Thought by some to be the “root of all evil,” money is the root of the issue which the husband-appellant, James A. Magee, presents for this Court’s resolution in his appeal from the Jackson County Chancery Court’s award of a divorce on the grounds of irreconcilable differences to the wife-appellee, Glenda K. Magee. Mr. Magee’s primary complaint is that the chancery court erred by severely diminishing his standard of living when it ordered him, first, to pay Ms. Magee child support, permanent alimony, rehabilitative alimony, and, attorney fees and, then, to provide Ms. Magee with health insurance. However, we affirm.
I. FACTS
¶ 2. James A. Magee, appellant, and Glenda K. Magee, appellee, married on August 2, 1969. To their marriage, five children were born: Jason, a son, age twenty-two years and emancipated, Kristopher, a son, age seventeen years, Brandon, a son, age twelve years, Amber, a daughter, age eleven years, who has Downs Syndrome, and Corey, a son, age eight years. At the time of the hearing all of the Magees’ children except for Jason were enrolled in the Jackson County Public Schools. Jason worked as an assistant manager for a Burger King restaurant in Pensacola, Florida. During their marriage, Mr. Magee worked as an instrument and electrical mechanic for Chevron Oil Company in Pascagoula. During the first five or six years of their marriage, Ms. Magee, a high school graduate, worked as a secretary. When they began to have children, the Ma-gees decided that Ms. Magee would remain at home to care for their children.
II. LITIGATION
¶3. Ms. Magee filed a complaint for divorce with the Chancery Court of Jackson County on July 7,1995, in which she charged Mr. Magee with habitual cruel and inhuman treatment. Ms. Magee pleaded alternatively the grounds of irreconcilable differences “if the parties [were] able to resolve matters between them and enter into an amicable property settlement agreement.” On August 2, 1995, Mr. Magee filed both an answer to Ms. Magee’s complaint for’ divorce, in which he denied that his wife was entitled to a divorce on either ground she alleged, and a counterclaim for divorce in which Mr. Magee charged Ms. Magee with habitual cruel and inhuman treatment but pleaded alternatively that the chancery court award them a divorce on the grounds of irreconcilable differences.
¶4. On August 28, 1995, the .chancery court entered a temporary order by which it awarded to Mr. Magee the temporary use of the martial home and custody of the Magees’ three minor sons, Kristopher, Brandon, and Corey. The court awarded Ms. Magee temporary custody of the Magees’ daughter, Amber, and it ordered Mr. Magee to pay his wife $1500 per month for temporary alimony and child support. The court did not allocate specific sums for the temporary alimony and child support.
¶ 5. The Magees executed a consent to divorce on the ground of irreconcilable differences by which they agreed to the entry of the chancery court’s judgment awarding them a divorce on the grounds of irreconeil *1036 able differences. They further agreed to sell their jointly owned home on the open market and to divide equally the profit realized from its sale. The Magees’ home and four-and-one-half acre parcel of land on which their home was located was mortgage-free. In their consent agreement, the Magees further agreed to permit the court to decide the following issues: (1) custody of their four minor children, (2) visitation of the non-custodial parent, (3) child support, (4) lump sum and periodic alimony, (5) the division of the Magees’ personal property, (6), the division “of the other assets of the parties, including ... [Mr. Magee’s] pension, profit sharing, retirement plan and other like investments, IRA’s, stocks, bonds, certificates of deposits, bank accounts, cemetery, plots,” ...., (7) division of the liabilities of the parties, and (8) the “assessment of attorney’s fees and court costs.”
¶ 6. After a two-day trial in May 1996 the chancellor rendered, first, an opinion of the court on July 9, 1996, and, secondly, an amended opinion of the court on July 17, 1996. On August 12, 1996, the chancery court rendered and entered its judgment of divorce into which it incorporated its findings contained in its amended opinion dated July 17, 1996. The appellant, James A. Magee, Jr., filed a motion for a new trial, alteration or amendment of judgment, or relief from judgment pursuant to Rules 59 and 60 of the Mississippi Rules of Civil Procedure, to which the appellee, Glenda K. Magee, filed her response. The chancellor heard the Ma-gees’ argument on the issues which Mr. Ma-gee presented in his motion and rendered an opinion of the court in which he reviewed the issues. An order incorporating the chancellor’s modification of the judgment of divorce was entered on October 28, 1996, and Mr. Magee filed a notice of appeal on November 21,1996.
III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUE
¶7. We quote verbatim Mr. Magee’s one issue as he states it in his brief:
The court erred by requiring the payment by the appellant of temporary alimony, permanent alimony, and lump-sum alimony as well as attorney fees together with other monetary payments thereby requiring the appellant to live with an insufficient income.
A. Chancellor’s resolution of the issues
¶ 8. In the judgment of divorce rendered on August 12, 1996, the chancellor granted Ms. Magee “a divorce of and from James A. Magee, Jr., on the grounds of irreconcilable differences.” The chancellor granted to Ms. Magee the “paramount care, custody and control of’ Kristopher, Amber, and Corey Magee, and to Mr. Magee he granted the “paramount care, custody and control” of Brandon Magee. The chancellor ordered Mr. Magee to pay Ms. Magee $615 per month “as child support for Amber, Kristopher and Corey_” Mr. Magee was ordered to pay Ms. Magee $700 per month “as permanent alimony” plus $150 per month “for a period of eighteen (18) months as periodic rehabilitative alimony.” The chancellor ordered Mr. Magee to “maintain medical insurance on [Ms. Magee] for thirty-six (36) months under COBRA,” after which Ms. Magee would then pay for this coverage if she chose to do so. Mr. Magee was further ordered to pay balances of certain medical bills which Ms. Magee and their daughter Amber had incurred in the total amount of $1,786.15. The chancellor awarded Ms. Ma-gee an attorney’s fee in the amount of $4,000 and ordered Mr. Magee to pay Ms. Magee at the rate of $500 per month “beginning the first month after execution of his judgment.” Later, in the order rendered and entered on October 28,1996, in response to Mr. Magee’s motion for a new trial or other relief, the chancellor granted Ms. Magee a “lien on [Mr. Magee’s] interest in the marital home” so that Mr. Magee would pay Ms. Magee her attorney’s fee in the amount of $4,000 “from [Mr. Magee’s] equity in the home” when it was sold.
B. Mr. Magee’s argument
¶ 9. Mr. Magee initiates his argument with the startling pronouncement that “[f]rom the adjusted gross income of $3,075.00 per month ..., James A. Magee is left with $383.00 per *1037 month.” He claims that Ms. Magee “is the recipient of monthly benefits” from James A. Magee as follows:
1. Child support: $615.00
2. Alimony: $700.00
3. Periodic alimony $150.00
4. Health insurance (Cobra): $187.00
5. Payment on two loans incurred before divorce: $468.00
$218.00
TOTAL: $2,338.00
¶ 10. Mr. Magee asserts that his “adjusted gross income” was $3,075, from which the subtraction of the above total of $2,338 leaves a remainder of “only $737 per month before payment on the unpaid medical bills.” The sum of $737 is $354 per month more than the amount of $383 with which Magee claims he is left after the payments to his former wife are subtracted from what he maintains was his monthly “adjusted gross income,” but Magee offers no explanation for this discrepancy of $354.
¶ 11. Mi’. Magee cites McEachern v. McEachern, 605 So.2d 809 (Miss.1992), to support his assertion that the Mississippi Supreme Court has decreed that a standard of living beyond the father’s financial ability to pay may not be imposed upon him through the imposition of child support. He further cites Tilley v. Tilley, 610 So.2d 348 (Miss.1992), in support of his argument that it is an abuse of discretion to order a husband to pay aggregate monthly support beyond his means.
C. Ms. Magee’s argument
¶ 12. Ms. Magee’s analysis of Mr. Magee’s income begins with her review of his W-2 form for 1995, the year before the chancellor tried the issues in this case. His W-2 form indicated that Mr. Magee’s gross earnings were $55,648.03. Division of $55,648.03 by 12, the number of months in a year, results in a gross monthly income of $4,637.34. In 1995, $4,717.35 was withheld for federal income tax for a monthly average of $393.11; $1,562.80 was withheld for state income tax for a monthly average of $130.23; $806.93 was withheld for Medicare for a monthly average of $67.24, and $3,450.20 was withheld for Social Security for a monthly average of $287.52. An arrangement of these sums by column follows:
Gross monthly income: $4,637.34
Federal income tax withheld per month: $393.11
State income tax withheld per month: 130.23
Medicare withheld per month: 67.24
Social Security withheld per month: 287.52
Total of average monthly withholdings: 878.10
Average monthly adjusted gross income: ;,759.24
¶ 13. According to Ms. Magee’s computation based upon Mr. Magee’s 1995 W-2 form, Mr. Magee’s average monthly adjusted gross income was $3,759.24, or $624.24 more than Mr. Magee’s asserted monthly adjusted gross income of $3,075, which the chancellor adopted in his findings of fact. Ms. Magee’s explanation for the $624.24 error is that Mr. Magee stated his taxable income was $50,-292.10, rather than his actual income on which the imposition of FICA taxes was calculated. Ms. Magee adopted the actual income, which was $55,648.03, for her analysis of Mr. Magee’s income. Ms. Magee adds that Mr. Magee testified that his wage in 1995 was $21.78 per hour and that in 1996, his employer increased his wage by $1.00 per hour to $22.78 per hour.
¶ 14. Ms. Magee then summarizes the alimony and child support which the trial court ordered Mr. Magee to pay her as follows:
*1038 Alimony $700.00
Child support for three children 615.00
Rehabilitative alimony for eighteen months: 150.00
TOTAL ALIMONY AND CHILD SUPPORT: $1,465.00
¶ 15. The subtraction of Ms. Magee’s total alimony and child support, $1,465, from Mr. Magee’s monthly adjusted income as determined by Ms. Magee in the amount of $3,759.24, leaves a difference of $2,294.24 which remains for Mr. Magee and the support of his son Brandon, whose custody the chancellor awarded to Mr. Magee.
D. Standard of review
¶ 16. On appeal, this Court will not reverse the chancellor’s decision regarding an award of alimony unless we find that his decision was manifestly erroneous or “against the overwhelming weight of the evidence.” Hubbard v. Hubbard, 656 So.2d 124, 131 (Miss.1995); Crowe v. Crowe, 641 So.2d 1100, 1102 (Miss.1994). See Tilley, 610 So.2d at 354 (reversing chancellor’s decision as an abuse of discretion where husband was required to make monthly support payments in excess of his income); Monroe v. Monroe, 612 So.2d 353, 357-59 (Miss.1992) (reversing lower court’s decision in part because wife’s award was insufficient to compensate her for her seventeen years of service to her marriage). “The word ‘manifest’, as defined in this context, means ‘unmistakable, clear, plain, or indisputable.’ ” Brennan v. Brennan, 638 So.2d 1320, 1323 (Miss.1994) (quoting Black’s Law Dictionary 963 (6th ed.1990)). Great deference is given to the chancellor because he is in a better position to determine what action would be fair and equitable in the situation than the appeals court. Tilley, 610 So.2d at 351.
E. Resolution of Mr. Magee’s one issue
¶ 17. We begin our review of Mr. Magee’s one issue with an explanation of our understanding of Mr. Magee’s one issue. Mr. Magee does not complain separately that the chancellor erred when he awarded Ms. Magee permanent alimony or when the chancellor awarded her rehabilitative alimony or when the chancellor awarded her child support or when the chancellor ordered Mr. Magee to pay Ms. Magee an attorney’s fee in the amount of $4,000. Instead, Mr. Magee contends that the sum of these specific monthly payments of permanent alimony, rehabilitative alimony, and child support combined with his payment of Ms. Magee’s attorney’s fee and his payment of $187 per month to maintain her health insurance' on his employer’s group health insurance program requires that he “live with an insufficient income.” Therefore, within the parameters which Mr. Magee’s issue creates, this Court’s primary concern is to determine whether the cumulative effect of the chancellor’s awards to Ms. Magee requires Mr. Magee to “live with an insufficient income.” This Court’s secondary concern is whether the chancellor erred in granting Ms. Magee any of the individual awards since Mr. Magee complains to this Court only about the cumulative effect of all the separate awards to Ms. Magee.
¶ 18. Mr. Magee does not argue that the chancellor erred by awarding Ms. Magee alimony. Instead, Mr. Magee urges this Court to
reverse the award of the monthly financial payment by the Appellant [Mr. Magee] to the Appellee [Ms. Magee], and reduce the award by the amount of monthly payments the Appellant is paying on notes incurred while the parties were married, the alimony should be reduced, and the adjusted gross.income of the Appellant should be adjusted downward by the amount he pays on the medical insurance for the Appellee, and the amount he pays on the medical bills.incurred by the Appellee during the separation of the parties that ended in divorce.
*1039 ¶ 19. The source of Mr. Magee’s discomfort is two-fold. First, he objects to the chancellor’s “ordering” him to pay the monthly installments in the amounts of $468 and $218 on the two loans which he received from his profit sharing plan with Chevron. Second, he objects to having to pay $187 per month for a period of three years to provide Ms. Magee with health care insurance through his employer. This Court considers the two loans first.

Loans

¶ 20. Mr. Magee testified that on May 3, 1993, he borrowed $25,000 from his profit sharing/savings plan, the proceeds from which he used to buy two cars for his older sons’ use and to purchase what was called both a stock plan and a retirement plan from A.G. Edwards. His two older sons were expected to repay Mr. Magee for a portion of the purchase price of the two ears from their income. Mr. Magee purchased the retirement plan from A.G. Edwards for approximately $14,000 with the balance of the loan proceeds. The monthly payment on this $25,000 loan was $468, and as of December 31, 1995, Mr. Magee owed a balance of $12,-671.49 on this $25,000 loan.
¶ 21. On October 17, 1995, Mr. Magee borrowed $12,000 from his profit sharing/savings plan with Chevron. Under cross-examination, Mr. Magee was asked, “Where did the money go ... the $12,000 on October 17?” Mr. Magee’s explanation was, “Either I paid it to my wife on alimony, or it’s in the account in Jason’s college fund; however you want to look at it. There’s like $10,000 in Jason’s college fund, and I paid her [Ms. Magee] approximately $18,000.” However, Jason, who was then twenty-two years old, had earned an associates degree from the local community college, and when this case was tried in May, 1996, Jason had moved to Pensacola, Florida, where he worked as an assistant manager at a Burger King restaurant.
¶22. The evidence in the record establishes that Mr. Magee used the proceeds from both loans as he chose, and that, at best, Ms. Magee benefitted only indirectly from either loan. Ms. Magee’s indirect benefit would have resulted only from Mr. Ma-gee’s having used the proceeds from the later loan in the amount of $12,000 to pay her temporary alimony and child support, but this Court assesses Mr. Magee’s testimony on this point as equivocal. The record contains no evidence that Ms. Magee was liable, whether as a surety or as a principal, for the payment of either of these two debts. Indeed, nowhere in her complaint for divorce did Ms. Magee assert that she was liable for these two debts, and she did not ask the court for any relief regarding them. The original judgment of divorce did not mention these two debts. Not until the chancellor entered an order in response to Mr. Magee’s motion for new trial, alteration or amendment of judgment, or relief from judgment, was the matter of these two loans considered by the chancellor. The order provided:
IT IS FURTHER ORDERED AND ADJUDGED that, with the division of the monetary assets in the Order of August 12, 1996, and with the additional assets being awarded to [Ms. Magee] as provided in this Order, and the restructuring of the payment of attorney’s fees, [Mr. Magee] should be able to pay off the two (2) loans to the stock plan ..., which had respective balances of $11,312.36 and $11,048.21 as of March 31, 1996, and thereafter the Defendant shall have sufficient money to afford him a normal life, with a decent standard of living.
¶ 23. To this Court it is not readily apparent that the chancellor “ordered” Mr. Magee to pay the balances due on these two loans. Instead, it appears that the chancellor recognized Mr. Magee’s personal liability to satisfy both loans created by his sole execution of the two notes which evidenced the debts of $25,0000 and $12,000. Therefore, as our standard of review requires of us, we conclude that the chancellor was not manifestly wrong in his adjudication of October 28,1996, that “[Mr. Magee] should be able to pay off the two (2) loans to the stock plan ..., which had respective balances of $11,312.36 and $11,048.21 as of March 31, 1996, and thereafter the Defendant shall have sufficient money to afford him a normal life, with a decent standard of living.”

*1040
Ms. Magee’s health insurance

¶24. In his accounting of Ms. Magee’s “monthly benefits,” Mr. Magee included the premium on Ms. Magee’s health insurance which he paid to Chevron pursuant to the judgment of divorce. He stated that this amount was $187. However, the only mention of the amount of $187 contained in the record is Mr. Magee’s counsel’s statement made during the chancellor’s hearing on Mr. Magee’s motion for new trial that his client must pay this amount per month for Ms. Magee’s health insurance coverage under Mr. Magee’s insurance which his employer, Chevron, provided. Ms. Magee did not question the accuracy of Mr. Magee’s counsel’s statement before the chancellor even though Mr. Magee never testified that it was correct, and she does not attack its correctness before this Court. Instead, Ms. Magee argues before this Court that while her former husband’s monthly income may be reduced by $187 per month for a three-year period, she does not personally receive that sum. Thus, she concludes that while she receives the benefit of health insurance coverage from Mr. Magee’s payment of $187 per month, her income is not increased by that amount.
An Attorney’s fee in the amount of $h,000 Development of the issue in the chancery court
¶ 25. Aware of the parameters of Mr. Ma-gee’s issue as we have found his issue to establish them, we start our review of this aspect of his issue with a narration of the evolution of the chancellor’s award of the $4,000 attorney’s fee as we find it in the record. Ms. Magee testified that she had paid her attorney $4,000, which she had borrowed from her parents. After both Mr. and Ms. Magee rested, Ms. Magee’s counsel offered to submit into evidence his statement for services rendered to his client. The chancellor inquired of Mr. Magee’s counsel, “Do you have any problem with him [sic] submitting that [his statement] after he rests?” Before Mr. Magee’s counsel could respond, Ms. Magee’s counsel commented, “Certainly I’ll say I’ll be subject to cross-examination, Your Honor, on my bill.” Mr. Magee’s counsel then responded, “And we wouldn’t object to the admissibility of it, subject to cross-exam, but we certainly don’t stipulate at all to the liability for it.” We quote from the record to emphasize what happened next.
THE COURT: I understand. Basically what I’m saying is, let [Ms. Magee’s counsel] reopen. When he gets that [his bill], we’ll take a recess and let him call and let him get that [his bill] over here. We need you [Ms. Magee’s counsel] to reopen, offer it, [then you, Mr. Magee’s counsel,] make your objection or whatever you want to do to it, otherwise you rest; is that right?
MS. MAGEE’S COUNSEL: Yes, sir.
THE COURT: Based upon that, is that agreeable with you, Mr. Roberts [Mr. Magee’s counsel]?
MR. MAGEE’S COUNSEL: Sure.
¶ 26. However, the record fails to contain any additional testimony from either Mr. or Ms. Magee, either of their attorneys, or any other witness about whether Ms. Magee’s counsel was reasonable in charging his client as he had. Ms. Magee’s attorney’s statement for services rendered was highly detailed in that it described each service and the date on which it was rendered and stated the number of hours to the nearest tenth of an hour spent rendering that particular service. In summary, Ms. Magee’s counsel charged her for 26.3 hours of his time at the rate of $150 per hour for a total of $3,945 and 34.8 hours of his paralegal’s time at the rate of $50 per hour for a total of $1,740. Thus, Ms. Ma-gee’s counsel had charged his client a grand total of $5,685.
¶ 27. In the judgment of divorce, the chancellor ordered that Mr. Magee pay Ms. Ma-gee the sum of $4,000 “as attorney fees, payable at the rate of $500 per month, beginning the first month after execution of this Judgment.” In the order which the chancellor entered on October 28, 1996, in response to Mr. Magee’s motion for new trial or other relief, the chancellor “voided and held for naught” the requirement that Magee “pay $4,000 ... the rate of $500.00 per month.” Instead, the chancellor granted Ms. Magee “a four thousand dollar ($4,000.00) lien on the *1041 interest of [Mr. Magee] in the marital home to pay [Ms. Magee’s] attorney’s fees.” The chancellor specifically provided that “[s]aid fees shall be paid from [Mr. Magee’s] equity in the home at the time the home is sold.”
Mr. Magee’s argument
¶ 28. Mr. Magee predicates the chancellor’s error in awarding Ms. Magee an attorney’s fee on her having been awarded assets “amounting to over $186,046,” which “included one-half of the proceeds from the sale of the house, one-half of the employment retirement program at Chevron, and in excess of one thousand dollars cash.” Magee cites Martin v. Martin, 566 So.2d 704 (Miss.1990), in which Magee asserts the Mississippi Supreme Court “pointed out that if a party is financially able to pay an attorney, the award of attorney fees is not appropriate.” He concludes his argument on the award of an attorney’s fee by citing Holleman v. Holleman, 527 So.2d 90, 95 (Miss.1988), in which the supreme court quoted McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), regarding the determination of an appropriate attorney’s fee:
The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the ease and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
¶ 29. In Holleman, the supreme court reversed the chancellor’s award of $18,675 in attorney’s fees plus $1,078 in expenses because “[t]here was no explanation for the number of hours required, the usual charge in the community, or counsel’s preclusion from other employment as a result of taking the present case.” Id. at 95. The supreme court held that there was no substantiating evidence upon which to award attorney’s fees; thus, “the chancellor abused his discretion in awarding such [fees and expenses], and was in error.” Id. at 96.

2. Resolution of the m,atter

a. Standard of review
¶ 30. Unless the chancellor erred in awarding Ms. Magee an attorney’s fee, this Court must ultimately conclude that the chancellor did not err in determining its amount of $4,000. To determine whether the chancellor erred in awarding an attorney’s fee, regardless of its amount, we begin by establishing a pertinent standard of review for this issue. The issue of whether an attorney’s fee should be awarded to one party in a divorce action is a question within the discretion of the chancellor. Overstreet v. Overstreet, 692 So.2d 88, 93 (Miss.1997); Hubbard, 656 So.2d at 131. If based upon the appropriate standard, this decision will not be reversed upon appeal unless it is found to be manifestly erroneous. Bredemeier v. Jackson, 689 So.2d 770, 778 (Miss.1997). However, the chancellor’s discretion is not without limits. Overstreet, 692 So.2d at 93. “Attorneys’ fees should not be awarded unless the chancellor finds that the party requesting attorney fees can establish an inability to pay.” Id. See Crowe, 641 So.2d at 1105 (finding that there was evidence in the record that wife’s monthly expenses exceeded her income and affirming chancellor’s award of attorney’s fees). After it has been determined that the work provided by the attorney was reasonably necessary, attorney’s fees may be awarded but should be fair and no more than the amount necessary to compensate the attorney for the services he actually rendered. Bredemeier, 689 So.2d at 778.
b. Factors which this Court elects to consider
1. Ms. Magee’s inability to pay her attorney’s fee
¶ 31. As Rule 8.05 of the Uniform Chancery Court Rules required her to do, Ms. Magee submitted her financial declaration as an evidentiary exhibit for the chancellor’s evaluation. Among her greater monthly expenses were rent in the amount of $400, utilities in the amount of $100, auto expenses in the amount of $200, and medical supplies for her daughter Amber in the amount of *1042 $205. Ms. Magee’s total monthly expense was $2,127, but the chancellor ordered Mr. Magee to pay her a total of $1,465 in child support and alimony, and this amount would be reduced by $150 eighteen months later when Mr. Magee no longer paid rehabilitative alimony in that amount. Of course, Ms. Magee’s total monthly expense was but an estimate; nevertheless, her estimated monthly expense exceeded her monthly income by more than $600 per month at best. Moreover, Ms. Magee had remained at home for at least the previous fourteen years with her husband’s approval to care for their five children. While Ms. Magee had worked as a secretary during the early years of the Ma-gees’ marriage, she never developed computer skills which are essential for today’s secretary or office worker. From the foregoing recitation of the facts which this Court finds the evidence in the record to support, this Court concludes that there was substantial evidence to support the chancellor’s determination that Ms. Magee did not have the financial resources from which to pay her attorney’s fee.
2. The chancellor’s apportionment of the Magees’ financial assets
¶ 32. To Mr. Magee, the chancellor awarded the following assets with the following-values:
Chevron Pascagoula Credit Union savings account $14,625.93
Quick & Reilly account 2.90
Texins Credit Union account 394.60
United States savings bonds 950.00
Magnolia Federal account 100.00
Another savings account 2,500.54
Joint checking account 625.59
A.G. Edwards IRA 8,984.00
Joint IRA 2,351.00
Third IRA 141.50
TOTAL: $32,469.06
¶ 33. To Ms. Magee, the chancellor awarded the following:
A.G. Edwards IRA $141.68
Quick & Reilly account 2.90
United States savings bonds 950.00
TOTAL: $1,094.58
¶ 34. Our review of the chancellor’s allocation of assets between Mr. and Ms. Magee establishes Mr. Magee’s ability to pay an attorney’s fee in the amount of $4,000 from the assets which became immediately available to him pursuant to the chancellor’s division of the Magees’ financial assets between them.
¶ 35. There were two other major assets belonging to the Magees. The first was their home and four-and-one-half acre lot on which it was located. Its value was estimated by the Magees to be between $85,000 and $100,-000, although Mr. Magee described some relatively major repairs required to repair some termite damage to the floor in one bedroom. We have noted that the Magees had agreed to sell their home and lot, which was encumbered by no mortgage, and divide equally the proceeds from the sale. The record does not indicate whether the Magees had sold their home before Mr. Magee perfected his appeal.
¶ 36. The other major asset was Mr. Ma-gee’s profit sharing/savings plan with Chevron which was valued at $287,092.67 as of December 31, 1995. Ultimately the chancellor awarded Mr. Magee 58% of its value, or $166,513.75, and Ms. Magee the remaining 42% of its value, or $120,587.92. The chancellor also awarded Ms. Magee 50% of Mr. Magee’s Chevron retirement plan, to which Mr. Magee had contributed over his more than two decades of working for Chevron. From Mr. Magee’s Chevron retirement plan, Ms. Magee would receive $412 per month after Mr. Magee became 65 years old. Mr. Magee argues on appeal that Ms. Magee must be credited with her 42% of his profit sharing/savings plan, but Ms. Magee counters that she can receive nothing from Mr. Magee’s profit sharing/savings plan account until Mr. Magee either quits working for Chevron or retires at age 65. The record supports Ms. Magee’s counter-argument; therefore, this Court considers only the balance of the chancellor’s division of the Ma-gees’ assets in determining whether the chancellor was manifestly wrong in ordering Mr. Magee to pay Ms. Magee an attorney’s fee in the amount of $4,000.
¶ 37. Ms. Magee’s receipt of $1,094.58 in financial assets does not erode the chancellor’s determination that Ms. Magee remained unable to pay her attorney’s fee, whatever its amount. This Court concludes that there was substantial evidence to support Ms. Magee’s financial inability to pay *1043 her attorney’s fee and that there was substantial evidence of Mr. Magee’s ability to pay her attorney’s fee. The chancellor failed to address the other McKee factors, but the record demonstrates that Mr. Ma-gee’s counsel raised no issue with the chancellor about the other factors. Mr. Magee’s counsel did not object to Ms. Magee’s counsel’s introduction into evidence of his statement for services rendered, and while Mr. Magee’s counsel expressed his intent to cross-examine Ms. Magee’s counsel about the content of his statement for services rendered, he never did so. Mr. Magee’s counsel offered no evidence regarding the relationship of Ms. Magee’s counsel’s proposed fee in the total amount of $5,685 to any of the McKee factors; neither did Mr. Magee’s counsel raise any issue about the attorney’s fee in his motion for a new trial and other relief.
¶ 38. Nevertheless, as we noted, the chancellor “voided and held for naught” his earlier order contained in the judgment of divorce that Mr. Magee pay Ms. Magee her attorney’s fee at the rate of $500 per month. Instead, the chancellor granted Ms. Magee a lien in the amount of $4,000 against Mr. Magee’s interest in the Magees’ home which was to be satisfied from Mr. Magee’s “equity in the home [when] the home [was] sold.” The chancellor’s excusing Mr. Magee from having to pay Ms. Magee’s $4,000 attorney’s fee at the rate of $500 per month left the balance of Mr. Magee’s monthly income undisturbed after he paid Ms. Magee permanent and rehabilitative alimony and child support. Thus, this Court finds no error in the chancellor’s award of Ms. Magee’s attorney’s fee since Mr. Magee bases the error on his being required “to live with an insufficient income.”
IV. CONCLUSION
¶ 39. Ultimately, “all awards should be considered together to determine that they are equitable and fair.” Hubbard, 656 So.2d at 130. The chancellor awarded Ms. Magee $700 per month in alimony, $615 per month in child support, and $150 per month in periodic rehabilitative alimony for a period of eighteen months for a total of $1,465 per month for a period of eighteen months. The court found that Mr. Magee’s adjusted gross income was $3,075 per month, although this Court finds equally plausible Ms. Magee’s analysis of Mr. Magee’s W-2 for 1995, from which she demonstrates that his monthly adjusted average income was $3,759.24. The subtraction of Ms. Magee’s total alimony and child support from Mr. Magee’s monthly adjusted gross income of $3,075 as found by the chancellor leaves Mr. Magee with a balance of $1,610 per month. Out of this amount, Mr. Magee is also required to pay Ms. Ma-gee’s medical insurance for a period of 36 months.
¶ 40. Regardless of whether Mr. Magee’s monthly adjusted income was $3,075 or $3,759, his monthly payments on his two loans totaling $686 were not “court-ordered” payments like his “court-ordered” payments of child support and alimony. From our review of all the chancellor’s awards to Ms. Magee, we find substantial evidence to support his finding in the order dated October 28, 1996, that after Mr. Magee pays the monthly payments of $468 and $218 on his two loans, Mr. Magee “shall have sufficient money to afford him a normal life, with a decent standard of living.” The chancellor was not manifestly wrong in arriving at that finding of fact by his correct application of such legal principles as Mr. Magee’s counsel raised during the trial of this case and the subsequent hearing which the chancellor conducted on Mr. Magee’s motion for new trial and other relief. Therefore, this Court resolves Mr. Magee’s one issue against him and affirms the judgment of divorce and subsequent orders which the Jackson County Chancery Court entered in this case.
¶ 41. THE JUDGMENT OF DIVORCE AND SUBSEQUENT ORDERS OF THE CHANCERY COURT OF JACKSON COUNTY ARE AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., MeMILLIN AND THOMAS, P.JJ., DIAZ, HERRING, HINKEBEIN, KING, PAYNE AND SOUTHWICK, JJ., CONCUR.