[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 647 
¶ 1. Harry and Gayle Stevens were married on August 22, 1986. Pursuant to a divorce on the grounds of irreconcilable differences in 2003, Chancellor Robert L. Lancaster of the Chancery Court of Clay County awarded Gayle Stevens both lump sum and periodic alimony. Aggrieved by the chancellor's decision, Harry appeals, and Gayle cross-appeals. Finding no error, we affirm as to the direct appeal and cross-appeal.
 FACTS ¶ 2. Harry and Gayle were married on August 22, 1986. At the time of the marriage, Harry was a partner in an accounting firm, Watkins, Ward, and Stafford ("WWS"), and Gayle was an administrative assistant in the same firm. However, in approximately 1989 or 1990, Gayle left her job at the firm, where she had been making approximately $18,000 per year, to take over management of Lincoln Furniture, a business owned by Harry, for which she received no salary. Gayle is a high school graduate and attended one year at the Mississippi University for Women. She is self-trained in the furniture business, as well as in interior decorating. Gayle also acted as a homemaker during the marriage. In 2000, Harry changed the locks at Lincoln Furniture Company, denying Gayle access, and closed the business altogether in 2002. Since that time, Gayle has remained unemployed.
 ¶ 3. In 1998, Harry began an extramarital affair with a coworker, which continued until approximately January of 1999. Harry and Gayle separated in July of 2000. On May 8, 2001, Harry filed for divorce in the Chancery Court of Clay County. On July 30, 2001, Gayle filed her answer and counter-complaint, stating that she did not desire a divorce and that the actions of Harry constituted willful abandonment. Alternatively, Gayle asked that she be granted a divorce on the grounds of habitual cruel and inhuman treatment, desertion, or irreconcilable differences. On November 19, 2003, Harry and Gayle consented *Page 648 
to divorce on the grounds of irreconcilable differences.
 ¶ 4. On March 10, 2004, the chancellor issued an opinion discussing alimony, the equitable division of property, and attorneys' fees. The chancellor found that the net value of Harry's estate was $604,776, while the net value of Gayle's estate was $174,450. On July 28, 2004, the chancellor entered a judgment incorporating the March 10, 2004 opinion which, inter alia, granted Gayle $5,000 per month in periodic alimony, lump sum alimony in the amount of $75,000 payable at $1,000 per month, and monetary interest as part of the equitable division of property in the amount of $60,000, payable at $1,000 per month. The chancellor additionally stated that Harry's income was likely to increase, while Gayle's income was not likely to increase. The judgment was later amended on August 16, 2004 in order to secure an equitable lien on a fourteen-acre tract of land, but was not amended in any other respect. Harry filed a notice of appeal on September 8, 2004, asserting that: (1) the chancellor abused his discretion by awarding periodic alimony without adequately discussing the Armstrong factors; (2) the chancellor abused his discretion by awarding $75,000 in lump sum alimony; (3) the chancellor abused his discretion by awarding periodic alimony of $5,000 per month; and (4), the chancellor erred by projecting an increase in the earnings of Harry and no such increase for Gayle. Gayle filed a cross-appeal on September 23, 2004, asserting that the chancellor erred by failing to award sufficient lump sum alimony.
 STANDARD OF REVIEW ¶ 5. Our standard of review on appeals from a chancery court is limited. Carrow v. Carrow, 642 So.2d 901, 904 (Miss. 1994). If the chancellor's decision is supported by substantial credible evidence, this Court will affirm it unless the chancellor was manifestly wrong, applied the wrong legal standard, or the decision was clearly erroneous. In re Estate of Carter,912 So.2d 138, 143 (¶ 18) (Miss. 2005) (citing Williams v. Williams,843 So.2d 720, 722 (¶ 10) (Miss. 2003)). "[I]t is not this Court's province to undermine the chancellor's authority by replacing the chancellor's judgment with our own." In re Estate of Carter,912 So.2d at 143 (¶ 18) (citing Madden v. Rhodes, 626 So.2d 608,616 (Miss. 1993)).
 ISSUES AND ANALYSIS I. Whether the chancellor abused his discretion by awarding periodic alimony without adequately discussing the Armstrong factors.
 ¶ 6. Harry first asserts that the chancellor erred by failing to adequately discuss the alimony award factors set forth byArmstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993). Harry contends that, although the chancellor made extensive factual findings, he failed to explain how such findings were weighed in light of the Armstrong factors. Harry asserts that the chancellor's statement that "[t]hese factors are addressed by the facts as above found by the Court" was insufficient.
 ¶ 7. "Alimony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit." Lauro v. Lauro, 847 So.2d 843, 848 (¶ 13) (Miss. 2003). Because "[a]limony and equitable distribution are distinct concepts[,] . . . where one expands, the other must recede." Id. at 849 (¶ 13) (citation omitted). Armstrong set forth the following factors to be considered by a chancellor when making alimony awards: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) *Page 649 
the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay for, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets of either party; or (12) any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. Armstrong, 618 So.2d at 1280.
 ¶ 8. The chancellor went to great lengths to discuss the parties' marital assets and liabilities and to come to a determination of the value of each of their estates. The chancellor, in his findings of fact, clearly discussed the facts pertaining to each of the Armstrong factors as pertaining to the parties, though he did not explicitly cite them as such as he was doing so; rather, he listed the factors at the conclusion of his discussion. As such, we find this assignment of error without merit and affirm the decision of the chancery court.
 II. Whether the chancellor abused his discretion by awarding $75,000 in lump sum alimony.
 ¶ 9. The following four factors are to be discussed in awarding lump sum alimony: (1) substantial contribution to the accumulation of total wealth of the payor either by quitting a job or becoming a housewife; (2) a long marriage; (3) where the recipient spouse has no separate income or the separate estate is meager by comparison; and (4) without a lump sum award, the receiving spouse would lack any financial security. Miller v.Miller, 874 So.2d 469, 473 (¶ 9) (Miss.Ct.App. 2005) (citingCheatham v. Cheatham, 537 So.2d 435, 438 (Miss. 1988)). The most important factor is the disparity between the parties' separate estates. Tilley v. Tilley, 610 So.2d 348, 352 (Miss. 1992) The chancery court's discretionary authority in awarding lump sum alimony has long been recognized in Mississippi. Id.
at 351. "The amount of alimony awarded is a matter primarily within the discretion of the chancery court because of `its peculiar opportunity to sense the equities of the situation before it.'" Id. (quoting Holleman v. Holleman, 527 So.2d 90,94 (Miss. 1988)). The chancellor's findings of fact show that Gayle quit her job at WWS early in the marriage to become a homemaker and to manage Harry's furniture business, Lincoln Furniture Company, for which she received no salary. The chancellor further noted that the parties were married from 1986 until 2002. The chancellor stated that "[t]he Court finds that after consideration of the equitable division of marital assets and the separate estates of the parties, [Gayle] lacks financial security and should be awarded alimony, both lump sum and periodic." The chancellor's conclusion that Harry's estate was valued at $604,776 and that Gayle's estate was valued at $174,450 made clear that there was a large disparity between the two. As such, the chancellor awarded Gayle $5,000 in periodic alimony, which brought Gayle's annual taxable income to $60,000 and reduced Harry's to $80,000. Further, because of the clear disparity between the estates, the chancellor awarded Gayle lump sum alimony in the amount of $75,000, thus bringing the value of Gayle's estate to $249,450 and reducing the value of Harry's estate to $529,776. As such, we find this assertion of error to be without merit and affirm the judgment of the chancery court. *Page 650 
 III. Whether the chancellor abused his discretion by awarding periodic alimony of $5,000 per month.
 ¶ 10. For the reasoning set forth in parts I and II above, we find this assertion of error without merit and affirm the decision of the chancery court.
 IV. Whether the chancellor erred by projecting an increase in the earnings of Harry and no such increase for Gayle.
 ¶ 11. Harry next asserts that the chancellor erred by finding that Gayle's income was not likely to increase beyond approximately $20,000 per year, while Harry's income was likely to increase. He asserts that Gayle held positions of responsibility throughout her marriage and that there was thus sufficient evidence to support a likely increase in income.
 ¶ 12. The record clearly shows that Harry's guaranteed income from WWS increased at an average of 6.51 percent per year over the course of the marriage. The record further shows that Gayle drew no income whatsoever from approximately 1989 or 1990 through the end of the marriage. As such, we cannot say that the chancellor's projections were without evidentiary support. We thus find this assignment of error to be without merit and affirm the judgment of the chancery court.
 CROSS-APPEAL Whether the chancellor erred by failing to award sufficientlump sum alimony.
 ¶ 13. We discussed the factors to be considered in granting lump sum alimony and their application to the facts of this case in Part II, above. Though there was a disparity in the sizes of Gayle's and Harry's estate's, we see no evidence in the record to give us cause to believe that the chancellor was manifestly wrong, applied the wrong legal standard, or was clearly erroneous in awarding Gayle $75,000 in lump sum alimony. Gayle's primary argument is that, even after the grant of $75,000 in lump sum alimony, the disparity between the estates is so great as to warrant a greater grant of lump sum alimony. We do not agree. The chancellor, in granting the $75,000 sum, explicitly and thoroughly discussed the disparity between the sizes of the separate estates. Because the amount of lump sum alimony awarded rests largely within the discretionary authority of the chancellor, we see no reason to exceed our authority by substituting our own judgement for that of the chancery court without being presented with any evidence of clear error on its part. We therefore find this assignment of error to be without merit.
 ¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF CLAY COUNTY ISAFFIRMED ON BOTH THE DIRECT APPEAL AND THE CROSS-APPEAL. ALLCOSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THEAPPELLANT/CROSS-APPELLEE AND APPELLEE/CROSS-APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES AND ROBERTS, JJ. CONCUR. CHANDLER, J., NOT PARTICIPATING.
 *Page 196